[Cite as *Galambos v. Estep*, 2016-Ohio-5615.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DARREN J. GALAMBOS, ET AL. | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiffs-Appellants | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| -vs- | : | |
| | : | |
| DEBRA J. ESTEP, ET AL. | : | Case No. 2016 AP 01 0004 |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Case No. 2014 CV 07 0443

JUDGMENT:     Reversed and Remanded

DATE OF JUDGMENT:     August 23, 2016

APPEARANCES

For Plaintiffs-Appellants

OWEN J. RARRIC
GREGORY W. WATTS
4775 Munson Street, NW
P.O. Box 36963
Canton, OH  44735-6963

For Defendants-Appellees

DAVID K. SCHAFFNER
132 Fair Avenue, NW
New Philadelphia, OH  44663

JUDE B. STREB
200 Market Avenue North, Suite 300
P.O. Box 24213
Canton, OH  44701-4213

*Farmer, P.J.*

{¶1}    On August 21, 1976, Glen and Vivian McCarty entered into an oil and gas lease with MB Oil & Gas as lessee covering fifty-three acres of their property.  The lease was recorded on or about September 28, 1976.  This tract contained a dwelling house.

{¶2}    On October 26, 1976, the McCartys entered into an oil and gas lease with The Belden Brick Company as lessee covering twenty-nine acres of their property.  The lease was recorded on or about October 26, 1976.  This tract did not contain a dwelling house.

{¶3}    On October 27, 1977, an amended consolidation of oil and gas leases was recorded to consolidate portions of the two leases to form the Hall & McCartney Unit Well No. 1.  A well was drilled in March 1977 on the twenty-nine acre tract.

{¶4}    In 1992, the McCartys sold their fifty-three acre tract and their dwelling house to Denver Turner.  The deed reserved all oil and gas rights on the property to the McCartys, but conveyed to Mr. Turner the right to receive free gas (200 mcf) from the gas well located on the twenty-nine acre tract, subject to Mr. Turner paying for any overages.

{¶5}    The twenty-nine acre tract the well was on was eventually conveyed in March/April 2008 to appellee, Debra Estep, nka Adkins, the McCarty's daughter.  The fifty-three acre tract with the dwelling house was eventually conveyed in March 2014 to appellants, Darren and Janna Galambros.  On March 31, 2014, appellee shut off the gas flowing to the dwelling house located on the fifty-three acre tract owned by appellants.  As a result, appellants had to convert their home to propane gas.

{¶6} On July 24, 2014, appellants filed a complaint against appellee and The Belden Brick Company, claiming four causes of action. Count One sought a declaration that they were entitled to 200 mcf of free gas each year produced by the well and appellee was not entitled to use gas from the well; Count Two alleged tortuous interference with contract; Count Three alleged conversion; and Count Four alleged unjust enrichment.

{¶7} On May 22, 2015, appellants filed a motion for partial summary judgment, seeking judgment on Count One. On June 5, 2015, appellee filed a cross-motion for summary judgment. Each party claimed genuine issues of matter fact did not exist regarding who was the rightful owner of the free gas. By judgment entry filed September 18, 2015, the trial court denied the motions.

{¶8} On October 26, 2015, the parties filed a stipulation wherein The Belden Brick Company agreed to accept the trial court's decision as to who holds the rights to the free gas. On same date, the parties filed joint stipulations, outlining the various conveyances and oil and gas leases over the years with attached exhibits.

{¶9} A bench trial was held on October 27, 2015. By judgment entry filed December 11, 2015, the trial court found in favor of appellee, finding appellee was entitled to the free gas allowance, as the free gas allowance pertained to the dwelling house on the leased premises, the twenty-nine acre tract owned by appellee. The trial court found the free gas allowance was not a covenant running with the fifty-three acre tract owned by appellants. The trial court dismissed the complaint with prejudice.

{¶10} Appellants filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶11} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT HELD THE PLAIN UNAMBIGUOUS LANGUAGE OF THE MCCARTY-TURNER DEED WAS NOT SUFFICIENT TO CONVEY THE FREE GAS ALLOWANCE FROM THE BELDEN BRICK LEASE TO APPELLANTS' PREDECESSORS-IN-TITLE."

II

{¶12} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT HELD THE TRANSFER OF FREE GAS RIGHTS IN THE MCCARTY-TURNER DEED FROM THE BELDEN BRICK LEASE WAS PERSONAL TO DENVER TURNER."

III

{¶13} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT HELD THE COVENANT FOR FREE GAS UNDER THE BELDEN BRICK LEASE RAN WITH APPELLEE'S PROPERTY IN DIRECT CONTRAVENTION OF THE EXPRESS CONVEYANCE OF THAT RIGHT IN THE MCCARTY-TURNER DEED."

I, II

{¶14} Appellants claim the trial court erred in finding the language of the McCarty-Turner deed did not convey the free gas allowance to their predecessors-in-title, and the granting of the right to free gas was personal to Mr. Turner alone. We agree.

{¶15} The issues herein require a review of the deeds and the oil and gas leases as a matter of law; therefore, our standard of review is de novo. *Saunders v. Mortensen,* 101 Ohio St.3d 86, 2004-Ohio-24. Under a de novo review, an appellate court may interpret the language of the written instruments, substituting its interpretation

for that of the trial court. *Children's Medical Center v. Ward,* 87 Ohio App.3d 504 (2nd Dist.1993). Written instruments "are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. East Ohio Gas Co.,* 38 Ohio St.2d 244 (1974), paragraph one of the syllabus. "The principles of deed construction dictate that a court presumes that a deed expresses the intentions of the grantor and grantee at the time of execution.\*\*\*A court cannot interpret the parties' intent in a manner contrary to the clear, unambiguous language of the deed.\*\*\*" *American Energy Corp. v. Datkuliak,* 174 Oho App.3d 398, 2007-Ohio-7199, ¶ 50. As explained by the Supreme Court of Ohio in *Pure Oil Co. v. Kindall,* 116 Ohio 188, 202-203:

It is, of course, the general rule in the construction of deeds, that in case of ambiguity the instrument must be construed most strongly against the grantor and in favor of the grantee. 2 Tiffany on Real Property (2d Ed.) 437:

'The courts, in connection with the construction of written conveyances, as of other instruments, have asserted some general rules of construction, to aid in ascertaining the intention of the parties thereto.

'In case of doubt, it is said, the conveyance is to be construed most strongly as against the grantor, or in favor of the grantee on the theory, it seems, that the words used are to be regarded as the words of the grantor rather than of the grantee. Applying this rule, an exception or reservation

in a conveyance is construed in favor of the grantee rather than of the grantor.'

{¶16} Appellants argue the McCarty-Turner deed conveyed not only the surface rights including the dwelling house on the fifty-three acre tract, but also the right to free gas from the Belden Brick oil and gas lease on the twenty-nine acre tract owned by appellee.

{¶17} Appellee argues the conveyance of free gas to Mr. Turner was limited to him alone. Despite the personal conveyance, it is appellee's position that the Belden Brick lease is limited to the twenty-nine acre tract upon which it was granted. Therefore, appellants' tract, which is segregated from the whole and does not include the Belden Brick lease, is not entitled to the free gas.

{¶18} As set forth above, the McCartys entered into an oil and gas lease with MB Oil & Gas as lessee covering fifty-three acres of their property in August 1976. In October 1976, the McCartys entered into an oil and gas lease with The Belden Brick Company as lessee covering twenty-nine acres of their property. In October 1977, an amended consolidation of oil and gas leases was recorded to consolidate portions of the two leases to form the Hall & McCartney Unit Well No. 1. A well was drilled in March 1977 on the twenty-nine acre tract.

{¶19} In 1992, the McCartys sold their fifty-three acre tract and their dwelling house to Mr. Turner. This tract was subject to the MB lease.

{¶20} In 2008, the McCarty's sold their twenty-nine acre tract to appellee. This tract did not contain a dwelling house and was subject to the Belden Brick lease.

{¶21} The fifty-three acre tract and the dwelling house was eventually conveyed to appellants in March 2014.

{¶22} At issue is the scope of the Belden Brick lease and the grant of free gas contained in the McCarty-Turner deed. The Belden Brick lease recorded on October 26, 1976, contained the following provision:

8. The Lessor may lay a pipe line to any one gas well on the premises, whether a producing well or a well used for gas storage purposes, and take gas produced from said well for domestic use in one dwelling house on the leased premises, at Lessor's own risk, subject to the use and the right of abandonment of the well by the Lessee. The first two hundred thousand cubic feet of gas taken each year shall be free of cost, but all gas in excess of two hundred thousand cubic feet of gas taken in each year shall be paid for at the last published rates of the gas utility in the town or area nearest to the leased premises. Lessor to lay and maintain the pipe line and furnish regulators and other necessary equipment at Lessor's expense. This privilege is upon the condition precedent that the Lessor shall subscribe to and be bound by the reasonable rules and regulations of the Lessee relating to the use of free gas, and shall maintain the said pipe line, regulators and equipment in good repair and free of all gas leaks and operate the same so as not to cause waste or unnecessary leaks of gas. If the Lessor shall take excess gas as aforesaid in any year and fail to pay for the same, the Lessee may

deduct payment for such excess gas from any rentals or royalties accruing

to the Lessor thereunder.

{¶23} Contained within this provision are two clauses specific to this case: 1) "take gas produced for said well for domestic use in one dwelling house on the leased premises" and 2) "[i]f the Lessor shall take excess gas as aforesaid in any year and fail to pay for the same, the Lessee may deduct payment for such excess gas from any rentals or royalties accruing to the Lessor thereunder."

{¶24} Appellants' dwelling is not located on the twenty-nine acre tract identified in the Belden Brick lease. However, we note in October 1977, prior to the McCarty-Turner conveyance, an amended consolidation of oil and gas leases was recorded to consolidate portions of the MB lease and the Belden Brick lease to form the Hall & McCartney Unit Well No. 1. We conclude the fact that the Belden Brick lease did not originally vest with the tract owned by appellants has no bearing on the issues given the consolidation of the oil and gas leases. Notwithstanding, at the time of the Belden Brick lease, the twenty-nine acre tract did not contain a dwelling house. The tract did not contain a dwelling house until some time after appellee acquired the property in 2008, well after the free gas allowance had been conveyed via deeds by appellant's predecessors-in-title.

{¶25} As to the second cited clause regarding the taking of excess gas, we find neither appellee nor Belden Brick have made any claim relative to monies owed for excess gas usage.

{¶26} The April 1992 McCarty-Turner General Warranty Deed included the following language:

> Grantors herein reserve all gas and oil rights on the above property, excepting that Grantee shall receive the free gas allowance from the present Belden Brick Company Lease subject to Grantee's obligation to pay Belden Brick Company for any gas used above the normal lease allowance.
>
> *To Have and to Hold the above granted and bargained premises, with the appurtenances thereof, unto the said Grantee, his heirs and assigns forever.*
>
> *And we, GLEN E. McCARTY and VIVIAN J. McCARTY the said Grantors, do for ourselves and our heirs, executors and administrators, covenant with the said Grantee, his heirs and assigns, that at and until the ensealing of these presents, we are well seized of the above described premises, as a good and indefeasible estate in FEE SIMPLE, and have good right to bargain and sell the same in manner and form as above written, and that the same are free from all incumbrances whatsoever except for real estate taxes which shall be pro-rated as of the date of closing and that we will Warrant and Defend said premises, with the appurtenances thereunto belonging, to the said Grantee, his heirs and assigns, against all lawful claims and demands whatsoever.*

{¶27} We find a reading of the entire granting clause to indicate the grantee, as well as "his heirs and assigns forever," were granted not only the metes and bounds description of the tract, but also the specific right to the free gas allowance subject to the overage provisions of the Belden Brick lease. The deed did not contain any termination or reversion language regarding the free gas allowance.

{¶28} R.C. 5301.02 governs words necessary to create a fee simple estate and states the following:

The use of terms of inheritance or succession are not necessary to create a fee simple estate, and every grant, conveyance, or mortgage of lands, tenements, or hereditaments shall convey or mortgage the entire interest which the grantor could lawfully grant, convey, or mortgage, unless it clearly appears by the deed, mortgage, or instrument that the grantor intended to convey or mortgage a less estate.

{¶29} A review of the subsequent deeds, Exhibits 5, 6, and 7 attached to the October 26, 2015 joint stipulations, indicates the continued reservation of oil and gas rights to the McCartys, however the respective grantor(s) conveyed the right to free gas usage subject to the McCarty-Turner Deed. None of the deeds contained termination or reversion language regarding the free gas allowance. The March/April 2008 fiduciary deed transferring the twenty-nine acre tract to appellee does not include any language regarding oil and gas leases and/or free gas. Appellants' purchase agreement (Exhibit

8) stated the contract was contingent upon "240,000 CF of free gas no mineral rights pass.  Upon verification of free gas by the well servicer."

{¶30}  Upon review, we find the trial court erred in finding the granting of the free gas allowance was personal to Mr. Turner alone and the conveyance of free gas did not remain with appellants who were the successors-in- title to the McCarty-Turner deed.

{¶31}  Assignment of Errors I and II are granted.  The judgment as to Count One of the complaint is reversed and granted in appellants' favor.  The matter is remanded for further proceedings as to Counts Two, Three, and Four of the complaint.

III

{¶32}  Based on our decision in Assignments of Error I and II, this assignment is moot.

{¶33}  The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby reversed, as Count One of the complaint is granted in appellants' favor, and the matter is remanded to said court for further proceedings consistent with this opinion.

By Farmer, P.J.

Gwin, J. and

Hoffman, J. concur.

SGF/sg 711