Opaline King HILL, et al *v.*
Robert L. GILLIAM, et al

84-194                                    682 S.W.2d 737

Supreme Court of Arkansas
Opinion delivered January 14, 1985

*Crumpler, O'Conner & Wynne,* by: *John W. Unger, Jr.,* for appellant.

*Keith, Clegg & Eckert, Oliver M. Clegg,* for appellee.

DAVID NEWBERN, Justice. This is a case presenting a question of oil, gas or mineral rights, thus our jurisdiction is based on Supreme Court and Court of Appeals Rule 29(1) (n).

In 1926 Nelson Williams, owner of the North 9/20ths of the Northwest Quarter of the Northwest Quarter of Section 26, Township 18 South, Range 17 West, Union County, Arkansas, conveyed a one-half mineral interest in the property to J. H. Long. The remaining surface and one-half mineral interest held by Williams was forfeited to the state by Williams in 1931 for failure to pay taxes. The State of Arkansas conveyed the surface and one-half mineral interest, which Williams had forfeited, to Jefferson Phillips in 1935. In 1937, Phillips conveyed a one-fourth non-participating interest in the minerals in the same property to Grimes. Later in 1937, Phillips conveyed to S. E. Gilliam an un-divided one-half interest in the property. The parties to this case agree that at that point Gilliam owned an undivided one-half interest in the surface and an undivided one-half interest in the minerals of the North 9/20ths of the North-west Quarter of the Northwest Quarter of Section 26, subject only to the outstanding one-fourth non-participating mineral interest held by Grimes.

In 1947, Gilliam, joined by his wife, executed a quit-

claim deed back to Phillips. The deed contained the following:

> [W]e . . . do hereby grant, sell and quit-claim subject to the reservations set out below . . . the following lands lying in the County of Union and State of Arkansas; to wit: North 9/20 acres of the NW 1/4 of the NW 1/4 of Section 26, Township 18 South, Range 17 West.

The language of the reservation came immediately thereafter and was as follows:

> The grantors hereto reserve from this Deed an undivided 1/2 interest in and to the oil, gas and other minerals, in, under and upon the above-described lands, or which may be produced therefrom, together with the right of ingress and egress for the purpose of prospecting for, producing, removing, refining and marketing of same, and all other rights useful or incident thereto.

The heirs of Phillips brought this action to quiet title, claiming that Gilliam's reservation was not effective to reserve to Gilliam the one-half interest in the minerals rights. The defendants, heirs of Gilliam, contended the reservation had the effect of keeping the one-half mineral interest in Gilliam. The chancellor agreed with the defendants, and the plaintiffs appeal. We affirm.

The Phillips heirs argued that application of the rule of *Duhig* v. *Peavy-Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878 (1940), would require the chancellor, and now this court, to construe the deed as having conveyed the one-half mineral interest owned by Gilliam to Phillips and reserving nothing to Gilliam. The Gilliam heirs agrued that even if the rationale of the *Duhig Case* were to be adopted, it would be subject to an exception which makes the rule inapplicable to quit-claim deeds. The *Duhig Case* involved construction of a warranty deed containing a reservation, and in *Rosenbaum* v. *McCaskey*, 386 So. 2d 387 (Miss. 1980), the Mississippi Supreme Court held the *Duhig* case inap-

plicable to a quit-claim deed containing such a reservation.

In his letter opinion, the chancellor relied on the *Rosenbaum Case* and held the *Duhig Case* does not apply when the reservation appears in a quit-claim deed. He also noted estate tax returns of S. E. Gilliam and his wife which had been introduced by the Gilliam heirs to show that the one-half undivided mineral interest was included in their taxable estates. The Phillips heirs contend the returns were irrelevant and thus inadmissible. As the case can be decided on the basis of the written instrument under consideration, we need not decide whether it was error for the chancellor to admit into evidence the Gilliam's estate tax returns. If it was error, it was harmless and may be disregarded in the de novo review. *Walker* v. *Walker*, 262 Ark. 648, 559 S.W.2d 716 (1978).

The opinion in the *Duhig Case* was composed for the Texas Supreme Court by a commissioner who expressed his personal opinion that when a deed purports to reserve one-half of the mineral interest, and the grantor owns only one-half of the mineral interest, the language of the deed is ambiguous but that ". . .when resort is had to established rules of construction and facts taken into consideration. . .it becomes apparent that the intention of the parties to the deed. . ." was that the grantee take the one-half interest in the minerals owned by the grantor. 135 Tex. at 506-507, 144 S.W.2d at 879-880. Apparently the "construction" rule the commissioner would have applied was that the language of reservation used by the grantor referred only to the one-half mineral interest owned by the third party.

The commissioner, however, noted that the members of the Texas Supreme Court for whom he was writing had expressed a rationale for decision which was entirely different. The Texas Supreme Court's decision, and thus the holding of the case, is that a grantor may not agree to warrant and defend title to a property interest and then, in a later clause in the same instrument, breach that warranty by reserving to himself some portion of that same property interest. The principle of estoppel is held to apply just as it would if the grantor in a warranty deed did not own property

at the time he executed the deed but acquired it later. 135 Tex. at 507-508, 144 S.W.2d at 880-881.

Thus, the holding of the *Duhig Case* is not at all inapplicable here, as Gilliam warranted nothing by conveying by quit-claim. The chancellor's refusal to apply the holding of the *Duhig* case was thus correct.

The Phillips heirs would have us apply the so-called "one step" approach, i.e., that the grantor's reservation is not a second step but is merely a reference to the already outstanding interest. That is the rationale expressed by the commissioner in the *Duhig Case* opinion. They cite *Brown v. Kirk,* 127 Colo. 453, 257 P.2d 1045 (1953); *Garraway v. Bryant,* 224 Miss. 459, 80 So. 2d 59 (1955); and *Murphy v. Athans,* 265 P.2d 461 (Okla. 1953), as having adopted that approach. While the estoppel principle is not specifically mentioned in any of those cases, the holding of each is entirely dependent upon the conveyance having been by warranty deed. In each it is noted that the grantor's reservation was construed as an exception to the warranty or intended to protect the grantor against a suit on his warranty.

In the case of a quit-claim deed containing a reservation such as the one here the reservation can have only the purpose of notifying the grantee of the mineral interest not owned by the grantor or the purpose of keeping the title to the reserved interest in the grantor. A quit-claim deed conveys the interest of the grantor in the property described in the deed. *Smith v. Olin Industries, Inc.,* 224 Ark. 606, 275 S.W.2d 439 (1955). It is not suggested the grantor of such a deed has any duty or reason whatever to notify his grantee of the interest he does not own. In this case, the grantee, Phillips, was known by Gilliam, the grantor, to have knowledge of Long's one-half interest in the minerals, as Phillips was in the chain of title subsequent to the grant to Long and had been the grantor in the deed to Gilliam.

We look to the deed and the context in which it was made to ascertain the intent of the parties. *Continental Casualty Co. v. Davidson,* 250 Ark. 35, 463 S.W.2d 652 (1971); *Davis v. Collins,* 219 Ark. 948, 245 S.W.2d 571 (1952). In this

case the deed and the context in which it was made show it was intended that Gilliam keep the one-half mineral interest. In view of the unlikeliness that Gilliam intended the reservation as notice to Phillips of Long's one-half interest in the minerals, the language of the reservation would be surplusage if it was not intended to keep the one-half mineral interest in Gilliam. We will not treat language of a deed as surplusage if we can attribute a reasonable meaning to it. *Wynn* v. *Sklar,* 254 Ark. 332, 493 S.W.2d 439 (1973). The reference to the reservation in the granting clause is an additional factor showing the grantor's intent to keep the mineral interest.

Affirmed.