F. Omaha Pope PETERSON, et al. *v.* Robert L.
SIMPSON and Rosa SIMPSON

85-1                                    690 S.W.2d 720

Supreme Court of Arkansas
Opinion delivered June 3, 1985
[Rehearing denied July 15, 1985.*]

*Gardner & Gardner*, by: *Stephen C. Gardner*, for appellant.

*Dale S. Braden*; and *Martin, Vater & Karr*, by: *Charles Karr*, for appellee.

---

\* George Rose Smith, J., not participating.

ROBERT H. DUDLEY, Justice. This quiet title action presents questions about oil, gas or mineral rights, thus jurisdiction is in this Court pursuant to our Rule 29(1)(n). The first point for reversal raised by the plaintiffs, appellants, concerns the construction to be given a warranty deed. In the deed, the owner of a fractional mineral interest purports to convey a larger interest than can be granted because of another outstanding fractional mineral interest and the grantor's own purported reservation of a fractional interest in the minerals. The trial judge was correct in ruling that the warranty deed failed to reserve an undivided one-half interest in the oil, gas and other minerals.

In 1940, the Supreme Court of Texas published its opinion on the issue now before us in *Duhig* v. *Peavy-Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878 (1940). In the 45 years since that decision was issued, *Duhig* has been accepted, in some form, by the courts of at least eight (8) oil and gas producing states: Alabama, Colorado, Mississippi, North Dakota, New Mexico, Oklahoma, Texas, Wyoming, and probably Louisiana. See 1 H. Williams & C. Meyers, *Oil and Gas Law*, § 311 n.12 (1981) and W. Ellis, *Rethinking the Duhig Doctrine*, 28 Rocky Mt. Min. L. Inst. 947 (1982) for a complete listing of the cases. It has recently been rejected, in part, in North Dakota, in *Gilbertson* v. *Charlson*, 301 N.W.2d 144 (N.D. 1981), and in Utah, in *Hartman* v. *Potter*, 596 P.2d 653 (Utah 1979).

We recently rejected application of the *Duhig* Rule with respect to reservations contained in quit-claim deeds in *Hill* v. *Gilliam*, 284 Ark. 383, 682 S.W.2d 737 (1985). The facts of the instant case, however, present us with an issue of first impression in Arkansas—whether we adopt the *Duhig* rule with respect to warranty deeds.

A brief outline of the *Duhig* facts and reasoning are necessary to understand the rule. Gilmer conveyed land to Duhig, reserving 50% of the minerals. It is undisputed that at this point Duhig owned all of the surface and 50% of the minerals. Duhig then executed a warranty deed to the predecessor in interest of Peavy-Moore Lumber Company which warranted title to the described land, but then set out the following statement: "But it is expressly agreed and stipulated that the grantor herein retains an undivided one-half interest in and to all mineral rights or minerals of whatever description in the land." *Duhig* v. *Peavy-Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878 (1940). Duhig and

the lumber company each claimed that they owned the 50% of the mineral interest not owned by Gilmer.

The Texas Supreme Court held in favor of the lumber company. The opinion was written by Commissioner Smedley, who did not agree with the majority justices. For himself, he wrote that the result was mandated by established rules of construction; that the deed showed an intent to convey to the lumber company all of the land owned by Duhig and a one-half interest in the minerals; and that the clause in question merely withheld the one-half mineral interest previously reserved in the Gilmer deed, which Duhig did not own, from the operation of the deed. For the majority, he explained the two step approach which they used in reaching their decision. First, the granting clause of the deed operates, and the lumber company receives all of the surface and one-half of the minerals, title to which was warranted. Duhig owns nothing. Next, the reservation operates, and the 50% interest in minerals returns to Duhig. Now the lumber company owns the surface but not mineral rights. At this point, both the grant and the reservation have been given effect, but Duhig is in violation of the warranty in the deed. To rectify the breach of warranty, 50% of the minerals are transferred from Duhig to the lumber company by using an analogy to the doctrine of estoppel by deed against assertion of an after acquired title.

It is not necessary to accept the Texas majority's two-step estoppel theory in order to accept the *Duhig* result. Professor Ellis, in his outstanding article, *Rethinking the Duhig Doctrine*, 28 Rocky Mt. Min. L. Inst. 947 (1982), analyzes the Duhig rule as being made up of two sub-rules:

> 1. A warranty deed which does not limit the interest in the minerals granted purports to grant 100% of the minerals. He labels this the "100% rule."

> 2. If the grantor of a warranty deed does not own enough interest to fill both the grant and the reservation, the grant must be filled first. He terms this the "allocation of shortage rule."

Professor Ellis also discusses the underlying reason for the *Duhig* Rule:

> In the United States, the recording system is the only method we have for keeping track of the ownership of

mineral rights. The recording system only makes available the evidence of title, evidence which is meaningless until interpreted by a title examiner. Rules like those that comprise the *Duhig* rule exist primarily to make it possible for title examiners to interpret the evidence they find in the recorder's office. Without such objective rules of construction, marketable title, and thus a market in mineral rights, would not be possible. The initial question faced by a court that is dealing with a *Duhig* problem is not whether to follow *Duhig* or some other rule of construction. The first question is whether to set aside all objective rules of construction and engage in a subjective inquiry into the meaning of the deed or to find the intent of the parties objectively according to accepted rules of construction.

The general criteria for making this threshold decision are clear. The goal of interpretation is finding, if possible, the actual intent of the parties. Relevant facts, which are admitted by the parties or are proper matters for judicial notice, can be taken into account if doing so will not injure the rights of subsequent purchasers or undermine reliance on the recording system. When, however, fairness to individual parties and preservation of a viable recording system are in conflict, preservation of the recording system, being more important, must control.

In the case at bar, Bullock, in 1938, conveyed land to Baird, reserving 50% of the minerals. It is undisputed that Bullock continues to own that 50% of the minerals. Next, in 1941, Baird conveyed his land and the other one-half of the minerals to Payne. In 1947, Payne conveyed his land and the one-half of the minerals he owned to Pope. In 1948, in the warranty deed now at issue, Pope, the predecessor in interest of the plaintiffs in this action, conveyed to Andrews setting out the following reservation: "Reserving however, from this conveyance, for the grantors herein, their heirs and assigns forever, ONE-HALF (½) of all oil, gas, coal and other minerals, in and to and that might be produced from the said real estate." Andrews then conveyed his interest to Price, who conveyed to Brown, who conveyed to Neal, who conveyed to Pearson, who finally conveyed to the Simpsons, the defendants in this quiet title action. The language in the deed to the Simpsons provides: "This deed is made subject to reservations of one half (½) of all minerals heretofore reserved. It is meant by

this deed to convey the surface and one half of all minerals."

The plaintiffs, successors in interest to Pope, urge us to examine subjective considerations in order to decide this case, as was done in *Hartman* v. *Potter*, 596 P.2d 653 (Utah 1979). The defendants, Simpsons, are subsequent purchasers, and they would have us apply the *Duhig* rule, a rule of objective construction. We choose to apply *Duhig* to the extent explained below.

■■ As set forth previously in describing the chain of title, the plaintiffs' predecessor in interest, Pope, did not convey directly to the defendants. In fact, there were four intervening conveyances between the Pope deed and the Simpson deed. To decide the issue now on the basis of what Pope subjectively thought, or intended, when he conveyed to Andrews in 1948, when neither the grantees, nor their title examiners were privy to that thought, would be greatly unfair. As Professor Ellis stated in concluding his article on *Duhig*: "The *Duhig* Rule is not intended to uncover the 'real' intent of the parties. It is intended to protect BFP's." W. Ellis, *Rethinking the Duhig Doctrine*, 28 Rocky Mt. Min. L. Inst. 947, 967 (1982). Therefore, the proper procedure to follow in cases which do not involve the original grantor and his immediate grantee, as here, is to arrive at the meaning of the deed according to rules of objective construction, which we now hold to include application of the *Duhig* rule. Subjective considerations are not appropriate in such cases. Accordingly, with respect to such reservations contained in warranty deeds, a subsequent grantee is to receive that percentage of mineral interest in the land not reserved to the grantor, since the deed purports to deal with 100% of the minerals. If both the grant and reservation cannot thereby be given effect, the reservation must fail and the risk of title loss is on the grantor.

Subsequent purchasers, or grantees, must be able to rely upon this interpretation or else, under these type of circumstances, every title would require a lawsuit in order to be alienable. Rejection of the *Duhig* Rule would mean sacrificing the degree of certainty and guidance that it can provide concerning marketability of mineral interests, and replacing it with an outbreak of lawsuits. This we are not willing to do.

The fairness of applying *Duhig* is obvious. First, Pope did not specify the quantum of interest in the minerals he conveyed. There are only two reasonable ways to read a warranty deed

which does not specify the quantum of interest conveyed, either "No interest" or "all the interest there is." The idea that Pope intended to convey no interest in the minerals does not comply with the expectations of reasonable people.

Second, Pope, did not own enough interest to satisfy both his grant and his reservation. That leaves only two choices, either the grantor bears all the loss or the grantee bears all the loss. It is more fair to allocate the loss to the grantor, who could have prevented the misunderstanding in the first place.

■ Our decision in this case does not change the general rule that subjective considerations may be taken into account in reformation cases involving the original grantor and his immediate grantee.

■ The second point for reversal raised by the plaintiffs, appellants, is that the trial court erred by refusing to hold that appellants acquired ownership to the undivided one-half interest in the minerals by adverse possession. The trial judge was correct. When a mineral ownership has not been severed by deed from the surface ownership, as here, one cannot acquire title to the minerals by adverse possession unless he actually invades the minerals by opening mines or drilling wells and continues that action for the necessary statutory period. *Taylor v. Scott*, 285 Ark. 102, 685 S.W.2d 160 (1985). Here, there was no drilling and operation of the gas wells continually for the statutory period of seven years.

Affirmed.

HOLT, C.J., HICKMAN and NEWBERN, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. Sometimes we are so carried away by popular rules of construction we ignore the intent of the grantor which can be ascertained from the deed. If the deed had said simply that it conveyed the land reserving or excepting fifty percent of the minerals, I would find the *Duhig* rule useful, for in that instance there would be ambiguity, and a rule of construction would be of some help. We would not know whether the grantor intended simply to notify the grantee that fifty percent of the minerals had been reserved by a previous grantor or the grantor intended fifty percent to be reserved to himself.

Here the grantors' reservation clearly said the reservation

was "for the grantors herein, their heirs and assigns forever." There is no ambiguity, and I find no need to resort to a rule of construction.

The scholarly article quoted by the majority is particularly unpersuasive. It refers to attempts to ascertain a grantor's intent as "subjective" unless the "actual" intent can be found. That sort of discussion is not helpful to me. Nor can I fathom how prolific application of the *Duhig* rule will help protect our recording system. If the fifty percent mineral reservation, outstanding at the time of the deed questioned here, was made in a recorded deed, subsequent grantees had constructive notice of it. If it was not recorded, subsequent grantees may be bona fide purchasers in good faith without notice. The *Duhig* rule has nothing to do with either situation.

I am even less impressed with the tricky rationale of the *Duhig* case. It says the grantor, in one instrument, warrants title to all the surface and all the minerals, reserves some minerals to himself, but having already conveyed them he cannot have them back by analogy to the after acquired title rule. I find my view to be completely in accord with that of Justice Alexander whose dissenting opinion in *Salmen Brick & Lumber Co.* v. *Williams*, 210 Miss. 560, 50 So. 2d 130 (1951), is quoted in part in 1 H. Williams and C. Meyers, *Oil and Gas Law*, § 311, at 580.9 (1984), as follows:

> I am unable to find support in a theory by which a court seeks gratuitously to save a grantor against an anticipated suit for breach of warranty. A warranty does not effect the conveyance. Title is acquired by the conveyance and guaranteed by the warranty. Nor is a deed void which subjects the grantor to a possible suit to enforce the warranty or for damages.

In discussing Justice Alexander's opinion, Williams and Meyers clarify the real effect application of the *Duhig* rule will have in the case before us. It will relieve the ultimate grantee of having to pursue his remedy on the warranty by construing the deed to achieve a result *contrary* to the intent of the grantor. To say the least, I find this to be a novel approach, and I am unwilling to march to the tune of a tortured Texas opinion whose author was not even in step with his own majority. This is an instance in which our herding instinct serves us poorly.

I respectfully dissent.

Justices HOLT and HICKMAN join in this dissent.