[Cite as *Talbot v. Ward*, 2017-Ohio-9213.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| RONALD TALBOT, et al, | ) | CASE NO. 15 MO 0001 |
| | ) | |
| PLAINTIFFS-APPELLEES, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| RAY R. WARD, et al, | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas of Monroe County, Ohio. Case No. 2013-435

JUDGMENT: Reversed and Remanded.

APPEARANCES:

For Plaintiffs-Appellees: Atty. Ethan Vessels
Fields, Dehmlow & Vessels
A Limited Liability Company
309 Second Street
Marietta, Ohio 45750

For Defendants-Appellants: Atty. Charles H. Bean
Thornburg & Bean
Post Office Box 96
113 West Main Street
St. Clairsville, Ohio 43950

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: December 18, 2017

ROBB, P.J.

**{¶1}** Intervenors-Appellants Katherine Haselberger, Charlotte McCoy and John L. Christman appeal the decision of Monroe County Common Pleas Court granting summary judgment for Plaintiffs-Appellees Ronald and Candace Talbot. This case involves the 1989 and 2006 versions of the Ohio Dormant Mineral Act (DMA) and interpretation of deeds transferring oil and gas royalty, bonus, and rental interests. Appellees are the surface owners and Appellants claim to be the holders of the oil and gas royalty, bonus, and rental interests underlying the surface. The trial court made two separate holdings in favor of Appellees. First, it found the 1989 version of the DMA was applicable and under that act, the oil and gas royalty, bonus, and rental interests were abandoned and vested with the surface. Second, it found Appellants did not demonstrate they were the holders of the oil and gas royalty, bonus, and rental interests. It found the deeds Appellants claimed gave them title to the oil and gas royalty, bonus, and rental interests did not transfer any interest to Appellants' predecessor.

**{¶2}** Three issues are raised in this appeal. The first issue is whether the trial court erred in applying the 1989 DMA. The second issue is whether the trial court erred in failing to consider the 1945 Deed from Ernest and Glena Ward to Nova A. Christman, Appellants' predecessor, selling Ward's "1/2 part of the royalty of all the oil and gas and the 1/2 of all rentals and bonuses in and under" the subject premises to Christman. The third issue is whether the trial court erred when it determined the deed from Dow and Mary Mellott to John and Minnie Tomolonis did not convey any oil and gas interest to John and Minnie Tomolonis, but rather the Mellotts retained the remaining 1/2 royalty of the oil and gas and 1/2 interest of all rentals and bonuses.

**{¶3}** For the reasons expressed below, the trial court's grant of summary judgement for Appellees is reversed and the matter is remanded with instructions for the trial court to enter summary judgment for Appellants. Appellants own the entire oil and gas royalty, rental, and bonus interests underlying the real property at issue.

## Statement of the Case

**{¶4}** Appellees own 70.25 acres in Monroe County. This tract of land was part of a larger 117.33 acre tract of land owned by E.M. and Glena Ward in the early 1930s.

**{¶5}** In 1931, the Wards conveyed the 117.33 acres to Walter Ady. The deed contained a reservation for 3/4 of the oil and gas royalty, rental, and bonus interests. The deed also indicated the coal was excepted from the conveyance because it was already sold to Samuel W. Harper of Wheeling, West Virginia.

**{¶6}** In 1934 Ady conveyed the surface and unreserved interest back to E.M. Ward. He did not reserve any interest. The deed, however, did reference the prior exception of coal.

**{¶7}** In 1936, E.M. Ward conveyed the 117.33 acres to Dow Mellott. However, in doing so, Ward reserved 1/2 of the oil and gas royalty, rentals, and bonuses. This deed also indicated the coal was excepted from the conveyance because it was already sold. Ward's reserved 1/2 oil and gas royalty, rental, and bonus interests were sold to Nova A. Christman in 1945. In identifying the 1/2 interest underlying the 117.33 acres, the deed described the 117.33 acres in the same manner that it was described in previous deeds.

**{¶8}** In 1943, Mellott conveyed the 117.33 acres to Minnie Tomolonis. There was a reservation and exception in the deed stating, "Excepting and reserving the coal Known as the Pittsburgh or No. 8 vein, the same having been sold to Samuel W. Harper of Wheeling, W.Va. Also excepting 1/2 of the oil and gas royalty and 1/2 of all rentals and bonuses from the above grant."

**{¶9}** In 1949, John and Minnie Tomolonis conveyed the 117.33 acres to Martha Conway, Elizabeth Balzdorfer, Walter Dietrich, Rilla May Rose, and Silvia McDaniel (Conway, et al.). The reservation in the deed provided, "The grantors reserve and except unto themselves, their heirs and assigns, the one half of oil and gas, with the right to enter upon said premises for the purpose of producing the same. Also excepting and reserving the coal and mining rights and the oil and gas rights as heretofore reserved, excepted and conveyed by former owners of said premises."

{¶10} The Tomolonises sold their purported 1/2 oil and gas interest in all rental, royalty, and bonus interests underlying the 117.33 acres to Nova and Dollie Christman in 1967.

{¶11} Following the Tomolonises conveyance of the surface to Conway, et al., the surface was conveyed multiple times before Appellees purchased 70.23 acres of the 117.33 acres. All of those deeds contained an exception for any coal, oil, or gas that had previously been reserved.

{¶12} In November 2013, Appellees sought to have the surface estate reunited with the mineral estate under the 1989 DMA. They filed a complaint for declaratory judgment and quiet title. Appellees named Ray Ward, Denver Ward, Nellie Nutt, Marcelene Norris, Carol Pittman, Lulu Belle Pierce, Vera Given, Audrey Ward, Sheryl Clift, Shelia Ferguson, Terry Pierce, Francis Ward and unknown heirs of Walter Ady.[1] The named defendants were the known heirs of Glena and Ernest Ward and the unknown heirs of Ady. Due to unknown heirs and not knowing some of the addresses of the known heirs, Appellees published notice of the suit. 1/9/14 Publication Notice.

{¶13} On December 31, 2013, Appellants, the Christman heirs, filed a motion to intervene claiming they were holders of 1/2 of the interest in the oil and gas royalty, bonus, and rental interests underlying Appellees' property. The motion to intervene was granted. 1/16/14 J.E.

{¶14} Appellants filed an Answer, Counterclaim, and Crossclaim. Their filing contained a recitation of the property transactions from Ward to Ady, Ady to Ward, Ward to Mellott, Mellott to Tomolonis, and so forth up to Appellees. In this recitation was the 1967 Tomolonis-Christman deed whereby Tomolonis conveyed his purported 1/2 interest in the oil and gas royalty, bonus, and rental interests to Christman. Appellants stated they filed an Affidavit/Claim/Notice to Preserve Mineral Interest in December 2013, which listed the Tomolonis-Christman 1967 conveyance of 1/2 of the oil and gas interest. Appellants also asserted the claims were governed

---

[1]These Defendants filed answers and multiple other filings in the trial court proceedings. However, they did not appeal the trial court's decision.

by the 2006 DMA, not the 1989 DMA arguing the 2006 DMA superseded the 1989 DMA. Therefore, they asserted their claim to preserve prevented the oil and gas interests from being deemed abandoned. At this point, Appellants were not claiming to own the entire oil and gas interest.

{¶15} Appellees answered the counterclaim. They asserted the Tomolonis-Christman 1967 deed conveyed nothing to Christman because Tomolonis did not have anything to convey. They asserted Ward retained 1/2 interest and Mellott retained 1/2 interest. Therefore, when Mellott conveyed the 117.33 acres to Tomolonis, there was no conveyance of a mineral interest. Furthermore, they contended the 1989 DMA was not superseded by the 2006 DMA.

{¶16} Appellees filed their motion for summary judgment asserting the same claims set forth in the answer to the counterclaim. The summary judgment motion contained a chart of the property transactions. Appellees' assertion in the complaint that the prior mineral holders were the heirs of Ward and heirs of Ady, was altered by Appellants' motion to intervene and counterclaim. It appeared they were now asserting the heirs of Mellott and Ward were the holders of the mineral interest, but those interests were abandoned.

{¶17} Appellants filed their motion for summary judgment asserting they owned 1/2 of the oil and gas royalty, rental, and bonus interests. They asserted the Mellott-Tomolonis deed did not reserve a 1/2 interest to Mellott. Rather, they argued the exception language was notice of the reservation by Ward. Thus, Mellott's conveyance to Tomolonis conveyed all the interest Mellott owned, which was the surface and 1/2 the oil and gas royalty, bonus, and rental interests. They also asserted the 1989 DMA was superseded by the 2006 DMA. As such, their claim to preserve prevented the interests from being deemed abandoned.

{¶18} Approximately two weeks after their motion for summary judgment was filed, Appellants filed a supplement to the Summary Judgment Motion. For the first time, Appellants claimed they owned 100% of the oil and gas royalty, bonus, and rental interests. Appellants referenced and attached the 1945 Ward-Christman deed to support their claim. Appellants also cited a new case to support their position that

the Mellott-Tomolonis deed did not reserve 1/2 oil and gas royalty, bonus, and rental interests to Mellott. It was a Texas case, *Duhig v. Peavey-Moore*, 135 Texas, 503, 144 S.W.2d 878 (1940). Attached to the supplement was a filed and recorded Corrective Affidavit/Claim/Notice to Preserve Mineral Interest, which listed the Tomolonis-Christman 1967 conveyance and the 1945 Ward-Christman conveyance. This affidavit purported to preserve the whole interest to the oil and gas royalty, bonus, and rental interests.

**{¶19}** Filed jointly with the supplemental summary judgment motion was a request for a new briefing schedule and permission to amend their answer, counterclaim, and cross claim. Despite Appellees' opposition to the motion, the trial court granted the request.

**{¶20}** Appellants then filed an Amended Answer and Counterclaim asserting they own 100% of the oil and gas royalty, bonus, and rental interests. They also once again argued the 1989 DMA was superseded by the 2006 DMA. Appellees answered the counterclaim.

**{¶21}** Appellants filed a Second Amended Motion for Summary Judgment and asserted all the same claims previously asserted in the first motion for summary judgment and the supplemental motion for summary judgment. They claimed to own 100% of the oil and gas royalty, bonus, and rental interests. One half of the interest was derived from the Tomolonises. They cited the *Duhig* case to support this position. The other half was derived from the 1945 Ward-Christman deed.

**{¶22}** The trial court entered summary judgment for Appellees. 2/11/15 J.E. The court found, under the 1989 DMA, the mineral interest at issue was abandoned and merged with the surface estate. 2/11/15 J.E. The court additionally stated the Tomolonises never possessed a half interest to convey to Christman. 2/11/15 J.E. Therefore, the Tomolonis-Christman deed did not transfer any interest. 2/11/15 J.E. In rendering its ruling, the trial court set forth a chart of the conveyances starting with Ward's conveyance to Ady and ending with Appellees acquiring the surface. 2/11/15 J.E. This chart does not reference the 1945 Ward-Christman oil and gas royalty, bonus, and rental interests deed, nor does it indicate why this 1945 deed was not

considered. In fact, the judgment entry does not address the other half interest Appellants claimed to own.

**{¶23}** Appellants filed a timely appeal from the trial court's decision. Prior to briefing, the matter was stayed pending the Ohio Supreme Court's decision on whether the 1989 DMA was superseded by the 2006 DMA. After the Court rendered its decision in *Corban v. Chesapeake Exploration, LLC*, the stay was lifted.

Standard of Review

**{¶24}** A court properly grants summary judgment "when an examination of all relevant materials filed in the action reveals that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12, quoting Civ.R. 56(C). An appellate court reviews the granting of summary judgment de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

First, Fourth, and Fifth Assignments of Error
Ohio Dormant Mineral Act

"The Court below erred in finding that the 1989 Dormant Mineral Act applied to this case which was filed after the effective date of the 2006 Dormant Mineral Act which took effect on March 30, 2006."

"The Court erred below in applying the 1989 Dormant Mineral Act and not the 2006 Dormant Mineral Act."

"The Court below erred in not finding title transactions in the pertinent 'look back period.'"

**{¶25}** These assignments of error address the trial court's decision to apply the 1989 version of the DMA to claims filed after the effective date of the 2006 version of the DMA.

**{¶26}** Recently, the Ohio Supreme Court in *Corban* explained the application of the 1989 DMA and the application of the 2006 DMA:

> The 1989 Dormant Mineral Act was not self-executing and did not automatically transfer ownership of dormant mineral rights by operation of law; rather, the surface holder was required to bring a quiet title

action seeking a decree that the mineral rights had been abandoned in order to merge those rights into the surface estate.

The 2006 amendment to the Dormant Mineral Act applies to claims asserted after its effective date and specifies the procedure that a surface holder is required to follow in order to have dormant mineral rights deemed abandoned and merged with the surface estate.

*Corban v. Chesapeake Expl., L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, ¶ 40-41. *See also Walker v. Shondrick-Nau*, 149 Ohio St.3d 282, 2016-Ohio-5793, 74 N.E.3d 427, ¶ 16.

**{¶27}** Application of *Corban* indicates the trial court's conclusion that the oil and gas royalty, bonus, and rental interests were abandoned under the 1989 DMA was incorrect. The 1989 DMA was not self-executing and is inapplicable to claims asserted after the 2006 DMA's effective date. *Corban*. The claims in this case were asserted in 2013, which was after the effective date of the 2006 DMA. Therefore, the grant of summary judgment for Appellees on the basis of the 1989 DMA was incorrect. Appellees concede this point in their appellate brief.

**{¶28}** In order to have the mineral rights deemed abandoned and reunited with the surface, Appellees were required to follow the procedures set forth in the 2006 DMA. The 2006 DMA requires notice of abandonment to be provided to mineral holders and a filing of an affidavit of abandonment in the office of the county recorder. R.C. 5301.56(B) and (E); *Albanese v. Batman*, 148 Ohio St.3d 85, 2016-Ohio-5814, ¶ 21-22 (2016) (Surface owner's service of the notice and filing of the affidavit are required under the 2006 DMA, R.C. 5301.56(B) and (E)). When the record is devoid of compliance with those provisions, the surface owners' challenge to the interpretation of the 1989 DMA is moot and the severed mineral rights remained with the holders. *Albanese* at ¶ 22.

**{¶29}** Here, the record is devoid of any compliance with R.C. 5301.56(B) and (E) as set forth in the 2006 DMA. There is no indication in the record an affidavit of

abandonment was filed and recorded, or a notice of abandonment was provided to the mineral holders.

**{¶30}** Although Appellees did not pursue their abandonment claim under the 2006 DMA, Appellants filed a counterclaim and moved for summary judgment. Appellants contended under both the 1989 and 2006 DMA their mineral rights were not abandoned. Thus, they set forth specific arguments for each version of the act.

**{¶31}** As to the 1989 DMA they claimed 4 savings events. The first was the 1977 Notice of Preservation which preserved the whole interest in the oil and gas royalty, bonuses, and rentals. The second was a 1981 lease with Reliable Exploration & Drilling Company. The third was the 1988 certificate of transfer from the Dollie Christman estate transferring her interest to Nova Christman. The fourth was the 2007 certificate of transfer from Nova Christman's estate transferring the interest to Appellants.

**{¶32}** As to the 2006 DMA, Appellants' counterclaim specifically asked for Declaratory Judgment and Quiet Title under that version of the act. 9/23/14 Amended Counterclaim. Appellants claim to be the mineral holders and asserted their interest was preserved. In support of that position they referenced the Affidavits/Claims/Notices to Preserve Mineral Interest filed in December 2013 and August 2014. Those filings listed the Tomolonis-Christman 1967 conveyance and the 1945 Ward-Christman conveyance.

**{¶33}** While the 1989 version is inapplicable, Appellants' claim that their interest was not abandoned and was preserved under the 2006 DMA, is still a viable claim and was before the trial court in their counterclaim and in the summary judgment motion. In granting summary judgment for Appellees, the trial court disagreed with Appellants' claim to be holders of the oil and gas interest. The trial court specifically found the deeds through which they claimed to acquire interest did not transfer to them any interest. Whether or not the deeds Appellants referenced gave them the oil and gas royalty, bonus, and rental interests is the issue in the counterclaim, the summary judgment motions, and the trial court's ruling. The trial

court essentially held Appellants were not holders and as such, their claims to preserve filed under the 2006 DMA had no effect.

**{¶34}** Consequently, although these assignments of error have merit and Appellees did not pursue the abandonment claim under the 2006 DMA, the resolution of these assignments does not mean the trial court's grant of summary judgment must be reversed and summary judgment entered for Appellants. The determination of whether summary judgment should have been granted for Appellants is addressed in the next two assignments of error.

Second Assignment of Error<br>Ward-Christman Deed

"The Trial Court erred in failing to rule that the Ernest M. Ward, et ux, to Nova A. Christman deed conveyed to Nova A. Christman, the Appellants' father, '1/2 part of the royalty of all the oil and gas and 1/2 of all rentals and bonuses "under the subject premises".'"

**{¶35}** Appellants argue the undisputed evidence before the trial court demonstrated Ward conveyed his 1/2 interest of the oil and gas royalty, rentals, and bonuses to Nova Christman in 1945. Nothing presented to the trial court indicated Christman disposed of this property prior to his death. The undisputed evidence indicates the interest was transferred to Appellants upon Christman's death. The August 2014 Corrective Affidavit/Claim/Notice to Preserve Mineral Interest listed the 1945 Ward-Christman conveyance and preserved that interest.

**{¶36}** Appellees do not explicitly concede this assignment of error has merit. However, they do not present any arguments opposing this assignment of error in their appellate brief.

**{¶37}** The trial court did not reference the 1945 Ward-Christman deed in its judgment entry. Admittedly, Appellants did not claim this interest when they first filed their answer, counterclaim, and cross claim. This interest was not claimed until August 2014 in Appellants' Supplement to Summary Judgment. 8/25/14 Supplement. At that time, Appellants moved to amend their answer, counterclaim, and cross claim. 8/25/14 Request for New Briefing Schedule. Although Appellees

opposed the request, the trial court granted it and permitted Appellants to file an amended answer, counterclaim, and cross claim. 9/9/14 Motion in Opposition; 9/9/14 J.E.; 9/23/14 Amended Answer, Counterclaim, and Cross Claim. Thus, the claimed 1/2 interest in oil and gas royalty, bonus, and rental interests from the Ward-Christman deed was before the trial court for consideration.

**{¶38}** As set forth above, in 1931, Ward conveyed the 117.33 acres to Ady. The deed contained a reservation for 3/4 interest of the oil and gas royalty, rentals, and bonuses. The deed also indicated the coal was excepted from the conveyance because it was already sold to Samuel W. Harper of Wheeling, West Virginia. In 1934, Ady conveyed the surface and oil and gas interest back to Ward. He did not reserve any interest. The deed, however, did reference the prior exception of coal. In 1936, Ward conveyed the 117.33 acres to Dow Mellott. However, in doing so, Ward reserved a 1/2 interest of the oil and gas royalty, rentals, and bonuses. This deed also indicated the coal was excepted from the conveyance because it was already sold.

**{¶39}** In 1945 Ward conveyed his reserved 1/2 oil and gas royalty, rental, and bonus interests in the 117.33 acres to Nova A. Christman. Defining the 1/2 interest, the deed described the 117.33 acres in the same manner it was described in previous deeds.

**{¶40}** In January 1977, Nova A. Christman and his wife Dollie Christman filed and recorded a notice of claim of interest in real estate. This document claimed the entire oil and gas royalty, rental, and bonus interests in the 117.33 acres. It listed the 1967 conveyance of 1/2 the interest from Tomolonis and the 1945 conveyance of the other 1/2 interest from the Wards.

**{¶41}** Dollie Christman died in 1985 and her real estate interest was transfered to Nova Christman by a Certificate of Transfer. This transfer included the interest underlying the 117.33 acres. The certificate of transfer was filed and recorded in August 1988.

**{¶42}** Nova Christman died 1992. His property was transferred to Appellants. Certificates of Transfer were filed and recorded in 2007 and 2012. The interest underlying the 117.33 acres was included in these transfers.

**{¶43}** Nothing in the record indicates Nova Christman disposed of the interest he acquired from Ward prior to his death. Therefore, given the above documents described and presented to the trial court, Appellants own 1/2 of the oil and gas interest through the Ward-Christman deed. The trial court erred in not holding as such.

**{¶44}** Appellants filed a Corrective Affidavit/Claim/Notice to Preserve Mineral Interest in August 2014. This notice listed the 1945 Ward-Christman oil and gas royalty, bonuses, and rentals conveyance. Accordingly, under the 2006 DMA, Appellants preserved this interest, and Appellants are entitled to summary judgment regarding this interest.

**{¶45}** This assignment of error has merit.

<u>Third Assignment of Error</u>
<u>Mellott-Tomolonis Deed</u>

"The Court further erred in finding that the other 1/2 of the oil and gas interests and rights in this case were not obtained by Appellants' predecessor in title, Nova A. Christman; (A) Since, Ohio is an estoppel by warranty state; and/or (B) that the intent of the deed from Dow and Mary Mellott to John and Minnie Tomolonis, Nova A. Christman's predecessors in title, wherein the parent tract of 117.33 acres was conveyed subject to the exception and reservation of 1/2 of the oil and gas rights was merely a limitation of the Grantors, Dow and Mary Mellott's warranty clause in said deed."

**{¶46}** The arguments presented under this assignment of error primarily concern the 1936 Ward-Mellott deed and the 1943 Mellott-Tomolonis deed. However, a recitation of the transactions is necessary to understand the parties' positions.

{¶47} In 1936 Ward conveyed the 117.33 acres to Mellott, but reserved 1/2 of the oil and gas royalty, bonus, and rental interests. The reservations and exceptions in the warranty deed state:

> Excepting and reserving the coal known as the Pittsburgh or No. 8 vein, the same having been sold to Samuel W. Harper of Wheeling, W.Va.
>
> Also excepting 1/2 of the oil and gas royalty and 1/2 of all rentals and bonuses from the above grant.

1936 Deed.

{¶48} In 1943 Mellott conveyed the 117.33 acres to Tomolonis. That warranty deed has a provision that states:

> Excepting and reserving the coal Known [sic] as the Pittsburgh or No. 8 vein, the same having been sold to Samuel W. Harper of Wheeling, W.Va. Also excepting 1/2 of all the oil and gas royalty and 1/2 of all rentals and bonuses from the above grant.

1943 Mellott-Tomolonis Deed.

{¶49} Five years later Tomolonis conveyed the surface to Conway, et al. That deed contains a provision that states:

> The grantors reserve and except unto themselves, their heirs and assigns, the one half oil and gas, with the right to enter upon said premises for the purpose of producing the same. Also excepting and reserving the coal and mining rights and the oil and gas rights as herein reserved, excepted and conveyed by former owners of said premises.

1949 Tomolonis-Conway, et al. deed.

{¶50} In 1967 Tomolonis sold the 1/2 oil and gas interest to Nova and Dollie Christman. Tomolonis-Christman oil and gas deed.

{¶51} The question before us is whether the Mellott-Tomolonis deed conveyed the 1/2 interest of the oil and gas royalty, rentals, and bonuses to Tomonlonis, or did Mellott retain the 1/2 interest.

**{¶52}** Appellants assert the provision in the 1943 Mellott-Tomolonis deed was a recitation of the previous reservations by Ward; Mellott was not reserving 1/2 interest of the oil and gas royalty, rentals, and bonuses. Or in other words, the provision in the 1943 deed was a notice provision. Appellants contend it was Mellott's intent to sell the entire estate he owned. Appellants argue the intent can be derived from the subsequent deeds where Tomolonis reserved 1/2 of the minerals and then sold them to Christman. They also ask for this court to apply the *Duhig* rule to this case. The *Duhig* rule is a rule of estoppel; under the *Duhig* rule a grantor and his successors are estopped from claiming title in a reserved fractional mineral interest when to do so would, in effect, breach the grantor's warranty as to the title and interest purportedly conveyed to the grantee. *Duhig v. Peavy–Moore Lumber Co.*, 135 Tex. 503, 507-508, 144 S.W.2d 878, 880-881 (1940).

**{¶53}** Appellees argue the language of the Mellott-Tomolonis deed clearly reserves 1/2 interest of the oil and gas to Mellott. Thus, they contend we should not look at any previous or subsequent deeds. Further, they argue *Duhig* is not binding on this court, and should not be applied.

**{¶54}** The issue before us requires a review of the deed as a matter of law. Thus, our standard of review is de novo. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 801 N.E.2d 452, 2004–Ohio–24. Under a de novo review, an appellate court may interpret the language of the written instruments, substituting its interpretation for that of the trial court. *Children's Medical Center v. Ward*, 87 Ohio App.3d 504, 622 N.E.2d 692 (2nd Dist.1993).

**{¶55}** Written instruments "are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. "The principles of deed construction dictate that a court presumes that a deed expresses the intentions of the grantor and grantee at the time of execution.* * *A court cannot interpret the parties' intent in a manner contrary to the clear, unambiguous language of the deed." *American Energy Corp. v. Datkuliak*, 174 Ohio App.3d 398, 2007–Ohio–7199, 882 N.E.2d 463, ¶ 50 (7th Dist.). When determining

the grantor's intent, a court must analyze the language used in the deed, "the question being not what the parties meant to say, but the meaning of what they did say, as courts cannot put words into an instrument which the parties themselves failed to do." *Id.*, quoting *Larwill v. Farrelly*, 8 Ohio App. 356, 360 (5th Dist. 1918).

**{¶56}** However, when the plain language of the written instruments is ambiguous, then a court can look to parol evidence to resolve the ambiguity and ascertain the parties' intent. *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 521, 639 N.E.2d 771 (1994); *City of Steubenville v. Jefferson Cty.*, 7th Dist. No. 07JE51, 2008-Ohio-5053, ¶ 22. This is a primary rule of contract construction. *Envision Waste Services, LLC v. Cty. of Medina*, 9th Dist. Nos. 15CA0104M and 15CA0105-M, 2017-Ohio-351, ¶ 15, quoting *Michael A. Gerard, Inc. v. Haffke*, 8th Dist. No. 98488, 2013-Ohio-168, ¶ 14.

**{¶57}** Terms in a contract are ambiguous if their meanings cannot be determined from reading the entire contract, or if they are reasonably susceptible to multiple interpretations. *First Natl. Bank of Pennsylvania v. Nader*, 9th Dist. No. 16CA0004-M, 2017-Ohio-1482, ¶ 25. Parol evidence is used only to interpret the terms, and not to contradict the terms. *Id.*, citing *Blosser v. Enderlin*, 113 Ohio St. 121, 134, 148 N.E. 393 (1925). "The decision as to whether a contract is ambiguous and thus requires extrinsic evidence to ascertain its meaning is one of law." *Nader*, quoting *Ohio Historical Soc. v. Gen. Maintenance and Eng. Co.*, 65 Ohio App.3d 139, 146, 583 N.E.2d 340 (10th Dist.1989).

**{¶58}** If parol evidence fails to clarify the meaning of the contract, then the contract is strictly construed against the drafter; interpreting the written instrument against the drafter is a secondary rule of contract construction. *Envision Waste Services; Cadle v. D'Amico,* 2016-Ohio-4747, 66 N.E.3d 1184, ¶ 33 (7th Dist.) ("Construing a contract against the drafter is a secondary rule of contract construction, and is applicable when the primary rules of contract construction * * * fail to clarify the meaning of the contract."). "Applying this rule, an exception or reservation in a conveyance is construed in favor of the grantee rather than of the

grantor.'" *Galambos v. Estep*, 5th Dist. No. 20016 AP 01 0004, 2016-Ohio-5615, ¶ 15, quoting *Pure Oil Co. v. Kindall*, 116 Ohio St. 188, 202-203, 156 N.E. 119 (1927).

**{¶59}** Our analysis begins with the language used in the Mellott-Tomolonis deed. That deed states:

> Excepting and reserving the coal Known [sic] as the Pittsburgh or No. 8 vein, the same having been sold to Samuel W. Harper of Wheeling, W.Va. Also excepting 1/2 of all the oil and gas royalty and 1/2 of all rentals and bonuses from the above grant.

1943 Mellott-Tomolonis Deed.

**{¶60}** We conclude the plain language of this deed indicates Tomolonis acquired 1/2 of the oil and gas royalty, rental and bonus interest. The Mellott-Tomolonis deed clearly indicates the conveyance does not include the coal because it was previously sold to Harper. The language also clearly indicates the conveyance does not include 1/2 of the oil and gas royalty, rental, and bonus interests. The language of the deed does not indicate who held the 1/2 oil and gas interests, rather it only indicates the 1/2 oil and gas interests were excepted from the deed. The language of the deed does not account for the other 1/2 interest. Since there is no accounting for the other 1/2 interest and the deed does not indicate the conveyance is for the surface only, the plain language of the Mellott-Tomolonis deed is that the surface and 1/2 of the oil and gas interests were conveyed to Tomolonis.

**{¶61}** In 1949, Tomolonis conveyed the surface to Conway, et al. In that deed Tomonlonis accounted for the entire oil and gas estate; Tomolonis specifically referenced the prior reservations and then reserved the 1/2 interest he acquired from Mellott. In 1967 Tomolonis sold the 1/2 oil and gas interest to Nova and Dollie Christman. Tomolonis-Christman oil and gas deed. In January 1977, Nova A. Christman filed and recorded a notice of claim of interest in the real estate. This document claimed the entire oil and gas royalty, rental, and bonus interest in the 117.33 acres. It listed the 1967 conveyance of 1/2 interest from Tomolonis, and the 1945 conveyance of the other 1/2 interest from Ward. Dollie Christman died in 1985

and her real estate interest was transferred to Nova Christman by a Certificate of Transfer. This transfer included the interest underlying the 117.33 acres. Nova Christman died 1992. His property was transferred to Appellants, which included the oil and gas royalty, bonus, and rental interests for the 117.33 acres. Accordingly, Appellants own the 1/2 oil and gas interest Tomolonis acquired from Mellott.

{¶62} Appellees insist the plain language of the deed indicates Mellott reserved 1/2 of oil and gas royalty, rental, and bonus interests and they have acquired this interest. We disagree. The use of the word except rather than reserve does not indicate Mellott was excepting the interest for himself. *American Energy Corp. v. Datkuliak,* 174 Ohio App.3d 398, 2007–Ohio–7199, 882 N.E.2d 463, ¶ 75 (7th Dist.), quoting *Ricelli v. Atkinson*, 99 Ohio App. 175, 132 N.E.2d 123 (1955) (Reservation and exception have two different meanings; an exception is a retention of an existing right, while a reservation is a creation of a new right or interest. However, over the years the two terms have often been used interchangeably and thus, a term's use does not by itself establish whether an exception or reservation has been created.). Furthermore, the language used to except the oil and gas royalty, rental, and bonus interests did not indicate who reserved or excepted that interest.

{¶63} The language does state the interest is excepted from "the above grant." This language could mean one of two things. It could mean the grantor was reserving or excepting the interest for himself. Or, it could mean the grantor was putting the grantee on notice of a previous reservation or exception because the sentence pertaining to the oil and gas interest is part of a two sentence paragraph where the first sentence is clearly a notice provision indicating the coal is not part of the conveyance as it was previously conveyed to Harper. Therefore, the second sentence indicating 1/2 of the oil and gas royalty, rental, and bonus interest are excepted from the conveyance could also be a notice provision of a prior exception by someone else in the chain of title. Therefore, as to whether or not Mellott excepted the 1/2 interest for himself is not clear. Rather, it is ambiguous.

**{¶64}** Since it is ambiguous we can look to parol evidence. Parol evidence in this instance is the chain of title – the deeds prior and subsequent to the Mellott-Tomolonis deed. The deed subsequent to the Mellott-Tomolonis deed is the Ward-Mellott deed. That deed indicates when Ward sold Mellott the surface, Ward excepted 1/2 oil and gas royalty, rental, and bonus interests. The Ward-Mellott deed refers to Ward's excepted 1/2 interest in a paragraph by itself. The paragraph preceding the exception is a notice provision of the previous conveyance of the coal interest to Harper. Thus, the Ward-Mellott deed uses separate paragraphs to distinguish between a notice of a prior conveyance/reservation/exception and new reservation/exception. If that reasoning is applied to the Mellott-Tomolonis deed then it leads to the conclusion that the clause at issue in this case is only a notice provision. It is not an indication Mellott was reserving 1/2 oil and gas royalty, rental, and bonus interests.

**{¶65}** Regardless, even if the two sentences were two separate paragraphs, we could not reach the conclusion Mellott reserved the 1/2 oil and gas royalty, rental, and bonus interests for himself. The chain of title clearly indicates Mellott did not own the entire oil and gas interest. Mellott only owned a 1/2 interest. The deed only accounted for a 1/2 interest. Thus, as stated above, the plain language of the deed conveyed the surface and the other 1/2 interest. Therefore, Mellott could not have retained 1/2 of the oil and gas royalty, bonus, and rental interests, and still convey 1/2 of the oil and gas royalty, bonus, and rental interests to Tomolonis.

**{¶66}** Furthermore, transactions following the Mellott-Tomolonis deed indicate it was Mellott and Tomolonis' intent for Tomolonis to acquire 1/2 the oil and gas royalty, bonus, and rental interests, not for Mellott to reserve the interest. When Tomolonis conveyed the surface to Conway, et al. in 1949, Tomolonis specifically referenced the prior reservations and then reserved the 1/2 interest he acquired from Mellott. In that deed Tomonlonis accounted for the entire oil and gas estate. Moreover, Tomolonis later sold the oil and gas interest to Christman. In January 1977, Nova A. Christman filed and recorded a notice of claim of interest in real estate. This document claimed the entire oil and gas royalty, rental, and bonus

interest in the 117.33 acres. It listed the 1967 conveyance of 1/2 the interest from Tomolonis, and the 1945 conveyance of the other 1/2 interest from Ward. In 1981, Nova and Dollie Christman entered into a lease with Reliable Exploration and Drilling Company. This lease included the oil and gas interest in the 117.33 acres along with other parcels of land. Dollie Christman died in 1985 and her real estate interest was transferred to Nova Christman by a Certificate of Transfer. This transfer included the interest underlying the 117.33 acres. Nova Christman died 1992. His property was transferred to Appellants, which included the oil and gas royalty, bonus, and rental interests for the 117.33 acres. There was no evidence submitted that Mellott owned this interest.

{¶67} Therefore, the plain language of the 1943 deed indicates Tomolonis acquired 1/2 oil and gas royalty, bonus, and rental interests, and the chain of title indicates Mellott did not reserve 1/2 oil and gas royalty, bonus, and rental interests for himself.

{¶68} However, even if we are incorrect and Mellott did reserve or except his half interest, that reservation or exception fails because Mellott violated the warranty of title and Mellott and his successors in interest are estopped from claiming title to the reserved fractional interest. This conclusion is based on the ideology underlying the *Duhig* rule.

{¶69} The *Duhig* rule is a Texas rule that was created in 1940. It is a rule of estoppel; under the *Duhig* rule a grantor and his successors are estopped from claiming title in a reserved fractional mineral interest when to do so would, in effect, breach the grantor's warranty as to the title and interest purportedly conveyed to the grantee. *Duhig*, 135 Tex. 503, 144 S.W.2d 878. Recently, a Texas Appellate Court explained *Duhig*:

> In *Duhig*, the granting clause purported to convey all of the land and minerals, and the reservation clause reserved a one-half mineral interest in the grantor, Duhig. *Id*. at 880. The warranty deed failed to mention that Duhig did not own all of the minerals and that a prior owner had also reserved a one-half interest. *See id*. Thus, because the

warranty deed did not mention the third-party interest in the minerals, the grantee expected that the conveyance included a one-half mineral interest. The *Duhig* court explained that in this situation, the grantor breaches his warranty in the warranty deed by appearing to convey more than he actually did. *See id.* The court reasoned that because the grantor holds "the very interest, one-half of the minerals, required to remedy the breach," *Duhig*, 144 S.W.2d at 880, the grantor should be "estopped from asserting a claim to that ½ mineral interest because of the prior outstanding reservation and the deed's purported conveyance of all of the minerals less only a ½ interest." *Gore Oil Co. v. Roosth*, 158 S.W.3d 596, 601 (Tex.App.–Eastland 2005, no pet.) (discussing *Duhig*).

*Combest v. Mustang Minerals, LLC*, 502 S.W.3d 173, 184 (Tex.App.2016).

**{¶70}** Appellees assert *Duhig* is distinguishable. We disagree. The *Duhig* deed contained a description by metes and bounds. *Duhig,* 135 Tex. at 506. After that description was an indication the tract of land was formerly owned by the Talbot-Duhig Lumber Company. *Id.* After the habendum and the clause of general warranty and constituting the last paragraph in the deed, was the reservation of an undivided one-half interest in and to all mineral in the described land. *Id.* Appellees contend in the matter at hand the warranty follows the granting clause which includes the Mellott's reservation. Therefore, Mellott was only warranting the surface interest. This logic, however, fails to acknowledge the deed when considered by itself does not account for the entire oil and gas estate and thus, it appears to convey to Tomonlonis 1/2 of the oil and gas estate not mentioned in the reservation. This is similar to *Duhig* where the entire estate was not explicitly accounted for in the deed.

**{¶71}** Furthermore, we note the *Duhig* rule has been accepted by the courts of at least seven states: Alabama, Colorado, Mississippi, North Dakota, Oklahoma, and Wyoming, and probably Louisiana. 1 H. Williams & C. Meyers, *Oil and Gas Law*, Section 311, 580.33 (2012). Likewise, other states have developed their own version of the *Duhig* rule. For instance, Arkansas, in determining the original grantor's

reservation failed in a circumstance similar to the one before this court, did not adopt the Duhig rule, but explained:

> Therefore, the proper procedure to follow in cases which do not involve the original grantor and his immediate grantee, as here, is to arrive at the meaning of the deed according to rules of objective construction, which we now hold to include application of the *Duhig* rule. Subjective considerations are not appropriate in such cases. Accordingly, with respect to such reservations contained in warranty deeds, a subsequent grantee is to receive that percentage of mineral interest in the land not reserved to the grantor, since the deed purports to deal with 100% of the minerals. If both the grant and reservation cannot thereby be given effect, the reservation must fail and the risk of title loss is on the grantor.

*Peterson v. Simpson*, 286 Ark. 177, 690 S.W.2d 720, 723 (1985) (stating it was not necessary to accept the *Duhig* analysis in order to accept the *Duhig* result).

{¶72} Our case is similar to *Duhig* and *Peterson.* The deeds involved are all warranty deeds. Mellott conveyed the surface and the language of the deed could mean he reserved 1/2 oil and gas royalty, bonus, and rental interests. The deed does not indicate the other 1/2 oil and gas royalty, bonus and rental interests had previously been reserved. Thus, without mentioning the other 1/2 oil and gas interest, it appears Mellott was conveying that interest to Tomolonis. However, from the chain of title, it is apparent Mellott only owned 1/2 the oil and gas interest. This Mellott-Tomolonis transaction occurred in 1943. Since that time the property has changed hands multiple times – Tomolonis sold the surface to Conway et al. and reserved the alleged 1/2 interest they received from Mellott, then Conway et al. sold the surface to Dietrich, who later sold the surface Urbanek, who later sold the surface to Stahl, who then sold a portion of the surface to Appellees. Tomolonis sold the purported 1/2 oil and gas interest they reserved to Christman in 1967. Thus, we are not dealing with the original grantor and grantee, which is similar to *Peterson.* In that

case, the Arkansas Supreme Court found, "If both the grant and reservation cannot thereby be given effect, the reservation must fail and the risk of title loss is on the grantor." This is the same result the *Duhig* rule requires.

**{¶73}** Although *Duhig* is not precedent in Ohio and has not been applied or discussed by any Ohio Appellate Courts or the Ohio Supreme Court, we find its reasoning and the *Peterson* reasoning persuasive. Therefore, even if Mellott did reserve 1/2 oil and gas royalty, bonus, and rental interests in the 1943 Mellott-Tomolonis deed, the reservation fails. It fails because Mellott breached the title of warranty and because if the grant and the reservation both cannot be given effect, the reservation must fail.

**{¶74}** For the above stated reasons, this assignment of error has merit. Tomolonis acquired 1/2 oil and gas royalty, rental, and bonus interests from Mellott in 1943. That interest was later conveyed to Dollie and Nova Christman. Appellees inherited this interest when the Christmans died and as such now own this 1/2 interest. The trial court erred in granting Appellees' summary judgment motion as to this 1/2 oil and gas interest and erred in denying Appellants' motion for summary judgment as to this 1/2 oil and gas interest.

### Conclusion

**{¶75}** All assignments of error have merit. The trial court's grant of summary judgment for Appellees is reversed and the matter is remanded. Upon remand the trial court is instructed to enter summary judgment in Appellants favor; Appellants own the entire oil and gas royalty, rental and bonus interest.

Donofrio, J., concurs.

Waite, J., concurs.