[Cite as *Crum v. Yoder*, 2020-Ohio-5046.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

BETTY MORRIS CRUM et al.,

Plaintiffs-Appellants,

v.

ADEN M. YODER et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 MO 0005**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2018-502

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

*Atty. Aaron Bruggeman, Atty. Craig Sweeney,* Bricker & Eckler LLP, 258 Front Street, Marietta, Ohio 45750 for Plaintiffs-Appellants and

*Atty. Melissa Schumacher, Atty. Richard Yoss,* Yoss Law Office, LLC, 122 North Main Street, Woodsfield, Ohio 43793 and *Atty. J. Fraifogl, Atty. Timothy Pettorini,* Roetzel & Andress, LPA, 222 South Main Street, Suite 400, Akron, Ohio 44308 for Defendants-Appellees

Dated:  October 26, 2020

---

**Robb, J.**

{¶1}    Plaintiffs-Appellants Betty Morris Crum et al. ("the Morris heirs") appeal the decision of the Monroe County Common Pleas Court denying their motion for summary judgment.  Seeking a declaratory judgment, they asked the trial court to find their mineral interest was not abandoned under the 2006 Dormant Mineral Act.  Specifically, the Morris heirs argued the mineral interest was not abandoned because the 2011 notice of abandonment was invalidly served by publication and/or there was a savings event in a 1994 deed.  In denying their summary judgment motion, the trial court issued legal holdings rejecting these arguments and essentially issued a declaratory judgment against the Morris heirs and in favor of Defendants-Appellees Aden Yoder, LL&B Headwater I, LP, and Doubledown LLC.  We therefore find the trial court issued a final appealable order.

{¶2}    For the reasons expressed herein, the assignments of error set forth by the Morris heirs are overruled, the trial court's judgment is affirmed, and judgment is entered in favor of Appellees.

STATEMENT OF THE CASE

{¶3}    Ernie Morris conveyed approximately 60 acres in Monroe County to himself and his wife, Louise I. Morris, "for their joint lives, remainder to the survivor thereof" in a quit-claim deed recorded on January 21, 1987.  (Vol. 192, P. 818).  On July 25, 1990, Ernie and Louise I. Morris recorded a deed transferring the surface of the property with a clause stating:  "Grantors except and reserve for theirselves and their heirs and assigns all oil and gas royalty, all oil and gas, together with all leasing rights."  (Vol. 201, P. 833).

**{¶4}** The six grantees listed in the 1990 surface deed were Robert E. Morris, Sara Lallathin, Betty Crum, Byron Morris, Kenneth Morris, and Rodney Morris; their tax mailing address was a Belmont County address (c/o one of the grantees). The grantees were the children of Ernie and Louise Morris, but this was not specified in the deed. With his wife still living, Ernie Morris died intestate in Monroe County on March 12, 1994.

**{¶5}** In a deed recorded June 13, 1994, the Morris children conveyed the subject property to the Kuhns; this deed contained a word-for-word recitation of the aforequoted mineral reservation from the 1990 deed. (Vol. 6, P. 83). In a deed recorded on May 21, 1997, the Kuhns conveyed the property to Aden and Emma Yoder; the 1990 mineral reservation was repeated. (Vol. 31, P. 849). Louise Morris died intestate in 2001.

**{¶6}** In May 2011, the Yoders' attorney researched the title of the mineral interest underlying the property owned by the Yoders and found it was reserved by Ernie and Louise Morris in the 1990 deed. The names of Ernie and Louise Morris were used to search the Monroe County deed records, lease records, preservation notice indexes, official records, and probate records.

**{¶7}** On May 12, 2011, the Yoders published a notice of abandonment in the local newspaper addressed to Ernie Morris and Louise I. Morris and their "unknown heirs, devisees, executors, administrators, relicts, next of kin, and assigns" stating the described mineral interest was abandoned due to lack of activity. *See* R.C. 5301.56(E)(1) (2006 Dormant Mineral Act). On June 20, 2011, the Yoders filed an affidavit of abandonment with the county recorder. *See* R.C. 5301.56(E)(2). No timely response (by claim to preserve or affidavit) was filed. *See* R.C. 5301.56(H)(1) (within 60 days of publication). In a July 13, 2011 letter, the Yoders instructed the recorder to memorialize the abandonment by making a notation in the margin of the 1990 deed. *See* R.C. 5301.56(H)(2).

**{¶8}** Thereafter, the Yoders transferred one-half of the mineral interest underlying the subject 60 acres (and an unrelated 9 acres) to LL&B Headwater I, LP ("LL&B"). This deed was recorded on July 23, 2013. (Vol. 248, P. 118). In a deed recorded September 9, 2016, the Yoders transferred 10 acres of the mineral interest under the subject property to Doubledown, LLC ("Doubledown"). (Vol. 341, P. 106).

{¶9}   The Yoders then transferred the property to Anthony and Kathy Gentile in a deed recorded on September 19, 2016.  This deed contained no reservation in favor of the Yoders and noted their transfers of one-half of the mineral interest to LL&B and 10 acres of the mineral interest to Doubledown.  (Vol. 341, P. 721).

{¶10} In 2015, the Morris heirs recorded mineral leases with Antero Resources Corporation regarding the mineral interest which the Morris children inherited from their parents.  Lease ratification and amendment documents were recorded in 2017.  On July 13, 2018, Betty Crum Morris recorded an "Affidavit of Claim to Preserve Mineral Interests" on behalf of herself and the other Morris children (or the heirs of those who had died).

{¶11} In a complaint filed in December 2018 and amended twice in 2019,[1] the Morris heirs asked for a declaration that the mineral interest was not abandoned because the notice of abandonment was invalidly served and/or the 1994 deed (wherein the Morris heirs sold the property with language reserving the minerals) was a savings event as the minerals were the subject of a recorded title transaction.  (The complaint mentioned quiet title in the heading of a section on deficient notice.)  The complaint named the following defendants (who are the Appellees herein):  Aden Yoder (who published the notice of abandonment and recorded the affidavit of abandonment along with his wife who had since died); LL&B (who purchased one-half of the minerals from Yoder); and Doubledown (who purchased 10 acres of the mineral interest from Yoder).

{¶12} The Gentiles (who purchased the property from Yoder) were also named as defendants; however, they thereafter relinquished any mineral interest which may have transferred when Yoder conveyed the property to them.  They conceded in a January 2, 2020 agreed judgment entry that the Morris heirs still owned the minerals because the notice of abandonment was statutorily deficient.

{¶13} Yoder filed a counterclaim seeking an opposing declaratory judgment and asserted a slander of title claim (due to the recording of the 2018 affidavit).  LL&B filed a similar counterclaim against the Morris heirs seeking declaratory relief and quiet title as

---

[1] We note, if the plaintiff amends the complaint, the defendant must answer the amended complaint but need not refile a counterclaim or cross-claim to maintain such claim.  *See, e.g., American Outdoor Advertising Co. v. P&S Hotel Group Ltd.*, 10th Dist. Franklin No. 09AP-221, 2009-Ohio-4662, ¶ 29, citing *Abram & Tracy Inc. v. Smith*, 88 Ohio App.3d 253, 263-264, 623 N.E.2d 704 (10th Dist.1993).

to the one-half portion of the minerals obtained from Yoder in the 2013 deed and alleging slander of title (citing the recording of the 2018 affidavit and the 2015 and 2017 lease documents). LL&B asserted a cross-claim against Yoder for breach of warranty of title (in the event the Morris heirs were successful).[2]

**{¶14}** The Morris heirs filed a motion for summary judgment on all claims and counterclaims. They alleged the 2011 notice of abandonment was deficient because Yoder did not attempt service by certified mail and did not engage in reasonable diligence in identifying heirs. It was noted that the 1990 deed from Ernie and Louise Morris, which first reserved the minerals, transferred the property to six grantees, four of whom had the same last name as the grantors. It was urged that a reasonable person would have researched these grantees to ascertain if they were the heirs of Ernie and Louise Morris.

**{¶15}** An affidavit of Betty Morris Crum confirmed the grantors' parental relationship to the surface grantees in the 1990 deed, the dates of death for Ernie and Louise Morris, and the fact that they died intestate. She attached the obituaries, which she said were published in the local newspaper, and pointed out that the heirs were identified in those obituaries. The Morris heirs also submitted the affidavit of a title examiner who said: she noticed how four of the six surface grantees shared the same last name as the grantors; she conducted a general internet search in 2016 on Google for Ernie and Louise Morris in Monroe County; and within minutes, she found their obituaries in the local newspaper which contained "the names and potential locations for their children, being those same individuals identified as grantees in the 1990 Deed."

**{¶16}** The Morris heirs attached Yoder's discovery responses which said: Yoder's attorney conducted the title work as to the mineral interest in May 2011; before publishing the notice of abandonment, they attempted to identify heirs by searching the name of Ernie Morris and the name of Louise Morris in the Monroe County deed records, lease records, preservation notice indexes, official records, and probate records; the names of Ernie and Louise Morris were also used to search the Belmont County probate records; no research was performed as to the surface grantees in the 1990 deed; the deed did not

---

[2] The trial court dismissed a common law abandonment count in the counterclaim on April 25, 2019. LL&B named Antero Resources as a defendant due to the recorded leases; however, the action against Antero was dismissed by agreed entry on January 21, 2020.

indicate they were heirs; no internet search was conducted to identify potential heirs of Ernie or Louise Morris; and certified mail was not attempted at the address of Ernie and Louise Morris set forth in the 1990 deed.

{¶17} The summary judgment motion filed by the Morris heirs alternatively argued that the 1994 deed, wherein they transferred the property to Yoder's predecessor, constituted a savings event occurring within twenty years of the 2011 notice of abandonment. Although the 1994 deed repeated the original 1990 mineral severance word-for-word, the Morris heirs argued it was more than a mere repetition as they inherited a portion of the minerals when Ernie died earlier in 1994 under the laws of intestacy at that time. A footnote claimed that although Ernie and Louise held the property as joint tenants with right of survivorship, they did not retain the mineral interest in the same manner because the 1990 deed transferring the property did not use words of survivorship in reserving the minerals.

{¶18} Yoder and Doubledown filed a joint opposition to summary judgment, which LL&B incorporated by reference into its summary judgment response. They said Yoder's search of the public records to identify the name and address of an heir for Ernie or Louise Morris was sufficient to satisfy the reasonable diligence standard, asserting there is no requirement to search surface grantees when researching a mineral reservation retained by the grantors or to conduct a general internet search for heirs. They also noted the 2016 search was a "later-conducted search" and the title examiner's affidavit did not attest the obituaries would have been available online in 2011, when the notice of abandonment was being prepared.

{¶19} An affidavit from Yoder's attorney confirmed the aforementioned discovery response, attesting that an examination of the Monroe County public records was conducted in 2011 to determine ownership of the subject mineral interest severed in 1990 but no transfers could be located. He also said the search failed to reveal any address for the mineral holders or the name or address of any heirs of the mineral holders and therefore notice was served on the heirs by publication in May of 2011.

{¶20} As to the 1994 deed, the defense argued the Morris heirs did not own any minerals when they conveyed the surface. They explained that at the time Ernie and Louise Morris owned the mineral interest in joint tenancy with right of survivorship and

therefore retained their minerals in the same manner. This would mean that title to the entire mineral interest vested in Louise Morris via survivorship when Ernie Morris died in 1994 and it was not until Louise Morris died in 2001 that the minerals were inherited by intestacy. The defense concluded the recitation of the mineral reservation in the 1994 deed was a mere repetition of the prior severance, and therefore, the 1994 deed does not contain a savings event.

{¶21} The Morris heirs filed a reply in support of their summary judgment motion. They complained the affidavit of Yoder's attorney (about the 2011 examination of the public records) did not specify what documents were reviewed. They also said it contradicted evidence in the 1990 deed which contained the last known address for Ernie and Louise Morris. As Yoder admitted he did not attempt certified mail at this address, the Morris heirs argued Yoder proceeded straight to publication in violation of the statute. On the issue of a savings event, the Morris heirs claimed a portion of the title to the minerals merged prior to their execution of the 1994 deed so that the mineral reservation in that deed was more than a mere repetition of a prior reservation.

{¶22} On February 19, 2020, the trial court issued its decision denying the motion for summary judgment filed by the Morris heirs. The court found that Yoder exercised reasonable due diligence before serving notice by publication because Yoder conducted a title search of the property and used the grantors' names to search the Monroe County deed records, lease records, official records, probate records, and preservation notice indexes, which failed to reveal an address for Ernie or Louise Morris or the identities of their heirs. The court rejected the argument that Yoder should have researched the grantees because some of them had the same last names as the grantors. As for the argument about a savings event, the court ruled that the 1994 deed contained a mere repetition of a prior reservation and did not affect title to the mineral interest.

{¶23} The trial court concluded: "Plaintiffs Motion for Summary Judgment is Denied in its entirety. The Court further finds that there is no just reason for delay, and that this 'Judgment Entry Incorporating Findings of Fact and Conclusions of Law' is a final appealable order, as defined under Civil Rule 54." The court assessed costs to the Plaintiffs (and granted judgment for the clerk of courts).

FINAL, APPEALABLE ORDER

Case No. 20 MO 0005

**{¶24}** Initially, this court will evaluate the trial court's decision which denied the motion for summary judgment filed by the Morris heirs, but the trial court did not expressly grant summary judgment for the defendants. To reiterate: the Morris heirs filed a motion for summary judgment; the three defendants filed responses in opposition without moving for summary judgment; and the Morris heirs filed a reply.

**{¶25}** Under the appropriate circumstances, a court that is denying a motion for summary judgment can grant summary judgment to the opposing party even if that party did not file a cross-motion for summary judgment. *Salem Community Hosp. v. Sankovic*, 7th Dist. Columbiana No. 96-CO-91 (Dec. 31, 1997). The entry of summary judgment under Civ.R. 56 against the movant does not prejudice the movant's due process rights "where all the evidence material to the issue being litigated is before the court, and the record shows that no genuine issue as to any material fact exists and that the nonmoving party is entitled to judgment as a matter of law." *Houk v. Ross*, 34 Ohio St.2d 77, 296 N.E.2d 266 (1973), paragraph one of syllabus (upholding the appellate court's grant of summary judgment for the non-movant where all parties submitted material evidence to the court and the issue was sufficiently argued to show there existed no genuine issue as to any material fact).

**{¶26}** This procedure was reaffirmed in an original action filed in the Ohio Supreme Court where the Court decided to grant summary judgment in favor of the non-movant. *State ex rel. Cuyahoga Cty. Hosp. v. Ohio Bur. of Workers' Comp.*, 27 Ohio St.3d 25, 28, 500 N.E.2d 1370 (1986) ("an entry of summary judgment against the moving party does not prejudice his due process rights where all relevant evidence is before the court, no genuine issue as to any material fact exists, and the non-moving party is entitled to judgment as a matter of law"). *Compare Marshall v. Aaron*, 15 Ohio St.3d 48, 472 N.E.2d 335 (1984) (where the plaintiff did not file a summary judgment motion, some defendants sought summary judgment, and the Supreme Court found the entry of summary judgment for a non-moving defendant was improper because the issues related to that defendant were different and were not addressed in any motion). The rule in *Houk* is an exception to the *Marshall* holding. *Todd Dev. Co. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, ¶ 17. *See also Ohio State Bar Assn. v. Watkins Glob.*

*Network*, 159 Ohio St.3d 241, 2020-Ohio-169, __ N.E.3d __, ¶ 22 (granting summary judgment in favor of non-moving respondents on various claims).

**{¶27}** Many facts were undisputed by the parties, and the trial court was asked to apply the law to those facts. The Morris heirs argue the issues are purely legal, with nothing to be tried. The trial court concluded that Yoder exercised reasonable due diligence before serving the notice of abandonment by publication and the 1994 deed did not contain a savings event as it was a mere repetition of previously reserved minerals. These are final legal holdings.

**{¶28}** Nevertheless, the trial court did not specifically state that it was granting summary judgment for the defendants. It is also noted that the trial court said the evidence was construed most favorably for the defendants, which would not be the case when the court decides to grant summary judgment in favor of a non-movant, who the court essentially places in the position of movant. *See Houk*, 34 Ohio St.2d at 83-84 (on granting summary judgment to non-movant "after construing the evidence strictly against both parties"). Yet, the trial court's statement to this effect was part of a collection of summary judgment law set forth in an introductory section of the court's judgment entry.

**{¶29}** An appellate court has no jurisdiction over non-final orders. *CitiMortgage Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, ¶ 10. A judgment is a final appealable order only if it meets the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B). *Id.* Pursuant to Civ.R. 54(B): "When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay."

**{¶30}** Adding Civ.R. 54(B) language can permit an appellate court to hear an appeal of a summary judgment entered on a declaratory judgment decision even if a slander of title claim remains pending. *See Potts v. Unglaciated Industries Inc.*, 2016-Ohio-8559, 77 N.E.3d 415, ¶ 38 (7th Dist.) (where the issue of property rights is an underlying question in the slander of title action which does not answer the additional elements of the claim including publication of a disparaging false statement on title in

reckless disregard of its falsity causing damages). However, the addition of Civ.R 54(B) language cannot convert an order that is non-final under R.C. 2505.02 into a final order. *Noble v. Colwell*, 44 Ohio St.3d 92, 96, 540 N.E.2d 1381 (1989). The issue here is whether the court's judgment entry, which specifically concluded by denying a summary judgment motion, was a final order under R.C. 2505.02.

{¶31} Pursuant to the final, appealable order statute, an order is final if it "affects a substantial right made in a special proceeding." R.C. 2505.02(B)(2). A "special proceeding" is defined as "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." R.C. 2505.02(A)(2). A declaratory judgment action is a special proceeding. *See General Acc. Ins. Co. v. Insurance Co. of N. America*, 44 Ohio St.3d 17, 22, 540 N.E.2d 266, 270 (1989). "[T]herefore, an order entered therein which affects a substantial right is a final appealable order." *Id.*

{¶32} A "substantial right" is a right that a person is entitled to protect or enforce pursuant to the federal or state constitution, a statute, the common law, or a rule of procedure. R.C. 2505.02(A)(1). *See also General Acc. Ins.*, 44 Ohio St.3d 17 (where cross-motions disputed whether the insurer had a duty to defend and the trial court declared there was no duty with Civ.R. 54(B) language, the Supreme Court found the declaration affected a substantial right in the special proceeding of a declaratory judgment action). A substantial right would be affected where a trial court issues a declaration on property rights. *See Potts*, 2016-Ohio-8559 at ¶ 33-34 (declaration of continued lease validity resolved the entire declaratory action).

{¶33} The actual effect of the court's judgment in a declaratory action must be considered to ascertain if a substantial right was affected. The denial of summary judgment is generally not a final, appealable order. *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 9. The fact that this court applies a de novo standard of review to summary judgment decisions does not overcome jurisdictional issues and allows us to rule on the mere denial of summary judgment. Where a statutory exception exists, however, the denial of summary judgment can be appealed. *See id.* (order denying a political subdivision immunity). The declaratory judgment statute provides: "The declaration has the effect of a final judgment or decree." R.C. 2721.02(A). *See also*

Case No. 20 MO 0005

*Potts*, 2016-Ohio-8559 at ¶ 33 (but where the trial court *granted* summary judgment on the claim for declaratory relief).

**{¶34}** While a denial of summary judgment is usually not a final appealable order, an appellate court may address the denial when the trial court has entered final judgment in the matter and the case turns on undisputed facts and purely legal questions. *Seoane-Vazquez v. Rosenberg*, 10th Dist. Franklin No. 19AP-16, 2019-Ohio-4997, ¶ 20 (where the trial court granted an opposing motion for summary judgment which was the final order on appeal), citing *Celebrezze v. Netzley*, 51 Ohio St.3d 89, 90, 554 N.E.2d 1292 (1990) (the denial of summary judgment was not a final appealable order; distinguishing a declaratory judgment action from a standard civil action).

**{¶35}** "[I]n declaratory actions, we treat a denial of summary judgment as a resolution of the action if the trial court sets forth the rights and responsibilities of the parties in its denial of summary judgment." *Griewahn v. United States Fid. & Guar. Co.*, 160 Ohio App.3d 311, 2005-Ohio-1660, 827 N.E.2d 341, ¶ 8 (7th Dist.). *See also Shops at Boardman Park LLC v. Target Corp.*, 7th Dist. Mahoning No. 13 MA 0188, 2016-Ohio-7283, ¶ 9 (order was final where "the court completely analyzed the narrow proposition put before it in the declaratory judgment action and made a very clear and specific ruling"). "[A]n order entering judgment in a declaratory judgment action which fails to declare the parties' rights and obligations is not final and appealable. Where the denial of a motion for summary judgment in the context of declaratory judgment gives rise, however, to the reasonable and logical inference that one party has in fact prevailed, the requirements of finality are satisfied." (Citation omitted). *Lexington Ins. Co. v. DunnWell LLC*, 2016-Ohio-5311, 69 N.E.3d 1066, ¶ 10 (9th Dist.).

**{¶36}** We conclude that the trial court adequately declared that the defendants prevailed on the legal issues under consideration. As to the notice issue, the trial court said "Yoder exercised reasonable due diligence" and found the actions taken before serving the notice of abandonment by publication were consistent with Seventh District case law. As to the savings event issue, the trial court specified that the 1994 deed did not affect title to any mineral interest and "thus is not a title transaction precluding abandonment under the 2006 Dormant Mineral Act." Although it would have been much preferable had the trial court specified that it was granting judgment in favor of the defense

Case No. 20 MO 0005

or that it was issuing a declaratory judgment in accordance with its legal holdings, we can draw "a reasonable and logical inference" that the trial court was entering a declaratory judgment that the notice of abandonment was properly served and the 1994 deed was not a savings event and that these legal holdings essentially result in a judgment in favor of the defendants. *See id.* at ¶ 10.

**{¶37}** Considering the legal issues raised to the trial court and the trial court's holdings on those issues, this court concludes there was nothing remaining to be tried, and the trial court issued a final, appealable order. We proceed to address the assignments of error.

DORMANT MINERAL ACT

**{¶38}** Under the Dormant Mineral Act (DMA), a mineral interest held by any person other than the surface owner "shall be deemed abandoned and vested" in the surface owner if the requirements in division (E) are satisfied and there were no timely division (B)(3) savings events. R.C. 5301.56(B) (unless the mineral interest is coal or is owned by the government). The possible savings events include the following if they occurred in the 20 years preceding the notice: (a) the mineral interest was the subject of a title transaction which was filed in the county recorder's office; (b) the holder engaged in production; (c) the holder engaged in underground gas storage; (d) an affidavit concerning a drilling or mining permit was recorded; (e) a claim to preserve was filed in accordance with division (C) of the statute; or (e) a tax parcel number was created. R.C. 5301.56(B)(3)(a)-(e).

**{¶39}** Only the first type of savings event is at issue in this case. The Morris heirs set forth three assignments of error. Their third assignment of error deals with whether there was a savings event under division (B)(3)(a). Their first two assignments of error deal with the notice requirement of division (E)(1).

**{¶40}** Pursuant to division (E), before a mineral interest becomes vested in the surface owner under division (B), the surface owner shall perform two tasks: (1) serve notice of abandonment; and (2) file an affidavit of abandonment with the county recorder. R.C. 5301.56(E)(1), (2) (file the affidavit between 30 and 60 sixty days after the (E)(1) notice was "served or published, as applicable"). As for serving the notice of abandonment, division (E)(1) states that the surface owner "shall":

Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned. If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located. The notice shall contain all of the information specified in division (F) of this section.

R.C. 5301.56(E)(1). Among other items, the notice must contain the "name of each holder and the holder's successors and assignees, as applicable * * *." R.C. 5301.56(F)(1). A holder is defined as "the record holder of a mineral interest, and any person who derives the person's rights from, or has a common source with, the record holder and whose claim does not indicate, expressly or by clear implication, that it is adverse to the interest of the record holder." R.C. 5301.56(A)(1).

<u>ASSIGNMENT OF ERROR 1:</u>
<u>LAST KNOWN ADDRESS OF RECORD HOLDERS</u>

{¶41} The first assignment of error set forth by the Morris heirs alleges:

"The trial court erred in holding that Appellee Aden Yoder was not required to attempt service by certified mail prior to publishing a Notice of Abandonment pursuant to R.C. 5301.56."

{¶42} The Morris heirs initially complain the affidavit submitted by the defense failed to specify and incorporate the precise documents that were reviewed in searching the public records and failed to specify when the search was conducted. First, there was evidence before the court sufficiently identifying when the search was performed. The defense affidavit discloses that the examination of the public records occurred in 2011 before Yoder published notice of abandonment. According to the evidence presented by the Morris heirs, notice of abandonment was published on May 11, 2011. The Morris heirs also attached Yoder's discovery responses to their motion for summary judgment, thus allowing the court to review this evidence as well. Therein, it was attested that the title work on the mineral interest was conducted in May of 2011, before the notice of

abandonment was published. Therefore, the evidence showed the search occurred within the first ten days of May of 2011. The date the search was conducted was sufficiently identified for the trial court.

{¶43} In addition to the end date for the records searched, the affidavit submitted for the defense said the search of the public records started with 1990, which is when the minerals were originally severed. The defense affidavit specified that the public records searched included the Monroe County deed records, lease records, preservation notice indexes, official records, and probate records. The evidence submitted by the Morris heirs showed the names of Ernie and Louise Morris were used in Yoder's search of the aforementioned Monroe County records, and their names were also used to search the Belmont County probate records. The defense affidavit attested that the search failed to reveal any address for the mineral holders (and failed to reveal heirs). There is no requirement to attach documents to show the absence of information. The Morris heirs do not indicate what record could have been attached to confirm the lack of information on the record holders. Moreover, the Morris heirs do not contend that the search of the aforementioned public records should have revealed an address for the record holders or the identity of the heirs (besides the information within the 1990 deed itself, upon which they base their notice arguments as discussed infra).

{¶44} Although the Morris heirs admit that both Ernie and Louise Morris died long before the 2011 search of the public record, they insist that certified mail should have been attempted on those record holders at the address listed for them in the 1990 deed before notice was served by publication. They note the opposition to their summary judgment motion did not say Yoder knew the record holders were deceased at the time they decided not to serve them by certified mail at the address in the 1990 deed.

{¶45} The Morris heirs emphasize the language in (E)(1) requiring the surface owner to attempt to serve notice by certified mail on the holder at the holder's "last known address" before resorting to publication and urge that the last known address of the record holders was reasonably ascertainable by the public record. They assert that the 1990 deed transferring the surface and reserving the minerals specifically provided the last known address of Ernie and Louise Morris, the record holders of the mineral interest. They therefore claim that the affidavit submitted by the defense falsely stated that there

Case No. 20 MO 0005

was no address for the record holders in the public records examined before serving notice by publication. The Morris heirs conclude that the failure to attempt to serve certified mail on Ernie and Louise Morris at the address in the 1990 deed violated R.C. 5301.56(E)(1), which they say should be interpreted as following the constitutional due process law requiring service if the address is "reasonably ascertainable."

**{¶46}** Inexplicably, this argument propounded by the Morris heirs fails to acknowledge that the address for Ernie and Louise Morris in the 1990 deed is the address of the property at issue in this case. Although the address for the grantors (Ernie and Louise Morris) was listed immediately after their names in the 1990 deed as 32999 Miltonsburg-Calais Road, Woodsfield, Ohio 43793, that was the address of the property being transferred in that very deed. When the property was later transferred to the Kuhns, that 1994 deed listed the tax mailing address for grantors (the Morris children) as 32999 Miltonsburg-Calais Road, Woodsfield, Ohio 43793.[3] Then, when the Kuhns conveyed the property to the Yoders in 1997, that deed listed the tax mailing address for the Yoders as 32999 Miltonsburg-Calais Road, Woodsfield, Ohio 43793.

**{¶47}** Clearly, when the Yoders searched the public records for the record holders or heirs in 2011, the Yoders were the surface owners of 32999 Miltonsburg-Calais Road and were attempting to reunite the minerals with this very surface. It would be absurd for the Yoders to send certified mail to their own property and address it to the two people who sold the property (to the predecessor of the Yoders' predecessor) in 1990. Consequently, this assignment of error is overruled.

ASSIGNMENT OF ERROR 2:

DILIGENGE IN SEARCHING FOR HEIRS BEFORE PUBLICATION

**{¶48}** The second assignment of error set forth by the Morris heirs provides:

"The trial court erred in holding that Appellee Aden Yoder exercised reasonable diligence in attempting to locate the heirs and assigns of Ernie Morris and Louise Morris."

**{¶49}** The Morris heirs emphasize that the DMA requires the surface owner to serve the notice of abandonment by certified mail to each holder "or each holder's

---

[3] Therefore, according to this later document in the relevant chain of title, the last known address reported by the 1990 surface grantees (the Morris children) was no longer the Belmont County address set forth in the 1990 deed but was the address of the property they sold the Kuhns in that 1994 deed (which the Kuhns sold to the Yoders in 1997).

successors or assignees" at the last known address of each. R.C. 5301.56(E)(1). The notice can only then be served by publication if service cannot be completed to any holder which, by statutory definition, includes those who derive their rights from or have a common source with the record holder. R.C. 5031.56(A) (if their claim does not indicate expressly or by clear implication that it is adverse to the record holder), (E)(1) (using mandatory language of "shall" in describing the surface owner's service obligations). The Morris heirs also point out how the notice, whether served by certified mail or publication, must contain "the name of each holder and the holder's successors and assignees, as applicable * * *." R.C. 5301.56(F)(1).

{¶50} Initially, the Morris heirs suggest Yoder failed to set forth evidence of his efforts to locate heirs. However, an affidavit attested that an heir could not be found after reviewing the Monroe County deed records, lease records, official records, probate records, and preservation notice indexes. And, the Morris heirs themselves supplemented this summary judgment evidence by submitting for the trial court's review Yoder's discovery responses, which included a statement that the probate records in Belmont County were searched as well. Therefore, there was summary judgment evidence on the efforts taken by Yoder to identify heirs of the record holders. *Compare Miller v. Mellott*, 2019-Ohio-504, 130 N.E.3d 1021, ¶ 31-32 (7th Dist.) (where this court said the surface owner failed to file an affidavit in opposition to summary judgment in order to refute the holder's claims that they failed to search for the holders, distinguishing *Shilts* and *Sharp* where summary judgment affidavits were filed explaining the search efforts)[4]; *with Soucik v. Gulfport Energy Corp.*, 7th Dist. Belmont No. 17 BE 0022, 2019-Ohio-491, ¶ 41, 51 (where there was no affidavit or other summary judgment evidence on the efforts to identify heirs and the non-movant showed that heirs could be identified in the probate records of the county where the property is located).

{¶51} The Morris heirs then argue Yoder's effort to locate heirs was not legally sufficient as they failed to use reasonable diligence. They complain Yoder failed to

---

[4] A different topic was clarified on reconsideration. *See Miller v. Mellot*, 7th Dist. Monroe No. 18 MO 0004, 2019-Ohio-4084, 146 N.E.3d 1184. The Ohio Supreme Court declined to accept the surface owner's appeal of the invalidation of their notice of abandonment and accepted a cross-appeal on a different issue in *Miller v. Mellot*, Ohio St.3d 1562, 2020-Ohio-313, 138 N.E.3d 1163.

conduct a general internet search, which they believe would have revealed the heirs of Ernie and Louise Morris; they submitted an affidavit from a title examiner who searched those names on Google in 2016 and found their obituaries containing the names of the heirs (and their former general locations) within minutes. They say reasonable diligence required the surface owner to research whether the heirs of the grantors may have been the grantees in the surface deed first severing the minerals in a case where four of the six grantees have the same last name as the grantors (and the two with different last names were females).

**{¶52}** The parties agree the surface owner must use "reasonable due diligence" in locating the holders of the mineral interest. The parties and the trial court reviewed the case law set forth by this appellate district. In *Shilts*, this court concluded the surface owner conducted a "reasonable search" or "took reasonable measures" to find heirs and opined: "It would be absurd to absolutely require an attempt at notice by certified mail when a reasonable search fails to reveal addresses or even the names of potential heirs who must be served." *Shilts v. Beardmore*, 7th Dist. Monroe No. 16 MO 0003, 2018-Ohio-863, ¶ 12, 15 (where the surface owner argued it met a "reasonable diligence" standard). In that case, the surface owner searched the public record including the chain of title and probate records, conducted an online search, and reviewed records at the Ohio Department of Natural Resources. *Id.* at ¶ 14. We did not say the online search was necessary or specify what the online search entailed.

**{¶53}** In *Sharp*, this court concluded that the "public record search constituted reasonable due diligence" after the heirs complained the surface owners only *searched the probate and deed records* and did not conduct a general internet search. *Sharp v. Miller*, 2018-Ohio-4740, 114 N.E.3d 1285, ¶ 18, 21 (7th Dist.).[5] While noting the search upheld in *Shilts* included an online search, this court said the surface owner's efforts must

---

[5] In *Sharp*, the surface owner also submitted the affidavit of an expert who conducted a search *after* the litigation was filed, including a search of certain genealogy websites, in order to show the heirs could not all be discovered even after an extreme search. *Sharp*, 2018-Ohio-4740 at ¶ 19. In addressing an argument that an attorney cannot argue at a hearing that the expert spent 80 hours where the expert's affidavit failed to so state, we noted the relevant search was the one conducted before the notice at issue, not a "later-conducted search." *Id.* at ¶ 20. Contrary to a suggestion by the Morris heirs, a search of the listed websites was not part of the effort undertaken prior to publishing the notice of abandonment.

Case No. 20 MO 0005

be viewed depending on the circumstances of each case. *Id.* at ¶ 17 (in response to an argument that the exact efforts upheld in *Shilts* should be construed as requirements in every case). It is noted that we additionally observed that there was no evidence that a general internet search would have revealed the heirs. *Id.* at ¶ 21 (and noted the relevant deed listed the record holders with only initials before their last names). The Morris heirs say their case is distinguishable as they demonstrated that a general internet search in 2016 quickly revealed some heirs (in 1994 and 2001 obituaries). The defense notes these results may not have been obtainable by a search in 2011, and there is no indication this would have led to addresses for the heirs (as opposed to general locations).

{¶54} In a subsequent case, we ruled on the issue of whether the surface owners "performed due diligence in finding the mineral interest heirs" and reiterated that "if reasonable efforts do not disclose any names or addresses, notice can be completed by publication." *Hutchins v. Baker*, 7th Dist. Monroe No. 19 MO 0005, 2020-Ohio-1108, ¶ 1, 34. We upheld a *search of the records of the recorder's office*, where it failed to reveal a non-conforming affidavit which was not connected to the property through a reasonable title search. *Id.* at ¶ 3, 35-36 (where the record holder and her children died intestate in West Virginia).

{¶55} In a Fifth District case, a surface owner served notice by publication after unsuccessfully attempting to serve a notice of abandonment by certified mail at the last known address for the record holder as listed in the 1965 chain of title (when a certificate of transfer issued by the probate court was recorded). The Fifth District found reasonable diligence was used where the surface owner's *search of the records of the recorder's office and the probate court* in the county where the property was located failed to reveal a new address or the identities of heirs. *Gerrity v. Chervenak*, 2019-Ohio-2771, 140 N.E.3d 164, ¶ 18 (5th Dist.) (the surface owners also searched the records of the county where unsuccessful service was attempted).

{¶56} The court also noted the heir's affidavit did not establish the precise availability of the record holder's 1997 obituary when she said the obituary "was readily available and discoverable through an internet search." *Id.* at ¶ 25. In any event, in addressing the heir's argument that a general internet search or a paid-subscription genealogy online search was required, the court said: "We do not find that the ODMA

contemplates a worldwide exhaustive search" for a holder. *Id.* at ¶ 23-25. An appeal was accepted in *Gerrity v. Chervenak*, 157 Ohio St.3d 1440, 2019-Ohio-4211, 132 N.E.3d 700.

**{¶57}** The Morris heirs cite examples of an attorney's reasonable diligence *in locating an address* by using "common and readily available sources in his search." *See Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983) (but stating it was providing examples, not a mandatory checklist; where counsel only consulted his own client and the post office). The Court said: "Reasonable diligence requires taking steps which an individual of ordinary prudence would reasonably expect to be successful in locating a defendant's address." *Id.*, applying Civ.R. 4.4(A) (which applies to service of process when "the residence of the party to be served cannot be ascertained with reasonable diligence"). However, that case dealt with the standard when filing a complaint in court, rather than a case involving a statute providing for notice of abandonment when the record holders or their heirs had 20 years to file a claim to preserve or otherwise ensure a savings event existed. Moreover, without a name for an heir, the issue of the heir's address does not arise.

**{¶58}** The Morris heirs are essentially insisting that a surface owner of "ordinary prudence would reasonably expect to be successful" in finding a record mineral holder's heir by researching a predecessor in title *to the surface* to see if the grantees in the deed (that first severed and reserved the minerals while conveying the surface) may have been the children of the grantors. In addition to the records of the recorder's office, the probate records of Monroe County were searched with the grantors' names, and no heirs were found. Nor were heirs found when a probate search was extended to Belmont County. Notably, there is no indication that a search of the public records using the names of the 1990 surface grantees would have demonstrated they were the heirs of the 1990 surface grantors (and record mineral holders).

**{¶59}** Essentially, this argument on identifying heirs by matching last names is an extension of the argument on whether an internet search was required. That is, the Morris heirs are alternatively arguing that even if a general internet search for heirs is not always required, it should be required as a matter of law where the mineral severance conveys

Case No. 20 MO 0005

the surface to six grantees and four of those grantees have the same last name as the grantors.

**{¶60}** The DMA "shall be liberally construed to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title." R.C. 5301.55. The term "records" includes "probate and other official public records, as well as records in the office of the recorder of the county in which all or part of the land is situated." R.C. 5301.47(B). *See also* R.C. 5301.47(C) (when applied to the official public records of the probate or other court, the term "recording" includes filing).

**{¶61}** Regarding general online searches, the information available on the internet is not always reliable. Furthermore, it changes continually. Previously printed information is gradually put on the internet, but the date of internet publication does not necessarily match the date of print publication for purposes of ascertaining what information was available years ago when statutory abandonment proceedings were utilized as to a property. Additionally, the availability of information may vary depending on the search engine used, the exact search terms employed, the use of quotation marks, and even the searcher's geographic location and past search history. Accordingly, the re-creation of a general internet search conducted years in the past is difficult. A search of the official public records does not engender these same difficulties.

**{¶62}** We conclude the surface owners engaged in reasonable efforts by using the names of the record holders to search the public records of Monroe County and the probate records of Belmont County (as well as Monroe County). It is undisputed that no heirs were revealed by these searches. A general internet search is not a mandate in determining the identity of the heirs of a record holder, and our position is not changed based on the last names of some of the *surface grantees* in the deed severing and retaining the minerals in favor of the grantor-record holders. This assignment of error is overruled.

ASSIGNMENT OF ERROR 3:

SAVINGS EVENT BY RECORDED TITLE TRANSACTION

**{¶63}** The third assignment of error presented by the Morris heirs provides:

"The trial court erred in holding that abandonment was not precluded by the existence of a preserving event outlined by R.C. 5301.56(B)."

Case No. 20 MO 0005

**{¶64}** If the notice of abandonment is not invalidated under one of the prior two assignments of error, then the Morris heirs contend that abandonment of the mineral interest was not valid due to the existence of a savings event under subdivision (a) of R.C. 5301.56(B)(3). Pursuant to (B)(3), the mineral interest will only be deemed abandoned and vested in the surface owner if within the 20 years immediately preceding the date on which notice is served or published, there were no savings events.

**{¶65}** The savings event in (B)(3)(a) occurs if: "The mineral interest was the subject of a title transaction filed in the county recorder's office." R.C. 5301.56(B)(3)(a). A "title transaction" is "any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or by trustee's, assignee's, guardian's, executor's, administrator's, or sheriff's deed, or decree of any court, as well as warranty deed, quit claim deed, or mortgage." R.C. 5301.47(F).

**{¶66}** When a recorded deed conveys the surface and merely repeats a prior mineral reservation without reserving any new mineral interest, the deed was not one "affecting title" to the minerals and the mineral interest was not the "subject of" the title transaction. *Dodd v. Croskey*, 7th Dist. Harrison No. 12 HA 6, 2013-Ohio-4257, ¶ 48 ("In order for the mineral interest to be the "subject of" the title transaction the grantor must be conveying that interest or retaining that interest."), *affirmed on other grounds*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147. *See also Sharp*, 2018-Ohio-4740 at ¶ 28; *Shilts*, 2018-Ohio-863 at ¶ 9-10 (both from this district). The Morris heirs acknowledge and do not take issue with this precedent.

**{¶67}** They argue that although it appears they merely transferred the surface and repeated the 1990 mineral reservation in the 1994 deed conveying the property, they actually owned some of the minerals at that time under the laws of intestacy. To reiterate, Ernie and Louise Morris owned the property jointly with right of survivorship. In a 1990 deed, they transferred the property to the Morris children while severing and retaining all minerals. On March 12, 1994, Ernie Morris died intestate. At the time, the intestacy laws provided the surviving spouse would receive the first $60,000 plus 1/3 of the balance of the intestate estate and the children would receive the remaining 2/3 of the intestate estate. R.C. 2105.06(C) (eff. 12/17/1986 until amended 3/22/2001). Applying this intestacy law, the Morris heirs contend they inherited minerals upon the death of Ernie

Morris in March of 1994. They conclude that these mineral thus merged with the surface *before* they sold the property in the June of 1994 deed. As such, they say that the mineral reservation in the 1994 deed, although a word-for-word repetition of the one in the 1990 deed, actually reserved some minerals. They reason that their inherited mineral interest would have been conveyed to Kuhn in 1994 if they had not included the mineral reservation clause.

{¶68} Initially, it must be pointed out that the Morris heirs did not attest to the value of the relevant estate of Ernie Morris in 1994; i.e., they did not state that there was more than $60,000. Nor did they attest that they inherited a certain percentage of the minerals upon the death of *Ernie Morris*. The affidavit submitted by one of the heirs merely states that they inherited all the minerals upon the death of *Louise Morris* in 2001. They make an argument that they suggest is a legal issue but fail to set forth summary judgment evidence of the necessary facts first.

{¶69} Secondly, even if the Morris heirs inherited a full intestacy share of the subject minerals upon the death of Ernie Morris, this would only give them 2/3 of the 1/2 mineral interest owned by Ernie Morris. That is to say, the Morris heirs do not acknowledge that their argument could only apply to 1/3 of the minerals (2/3 of the 1/2 they allegedly inherited from Ernie Morris). Even under their theory, Louise Morris had her original 1/2 plus the 1/3 she allegedly inherited under intestacy laws from Ernie Morris in March 1994 (if the minerals were not held joint and survivor). The Morris heirs would not have inherited Louise's portion until she died intestate in 2001, which is after the June of 1994 deed which they attempt to use as savings event.

{¶70} In addition to pointing this out, Appellees also respond with an argument that merger would not apply.

> Pursuant to the doctrine of merger, a lesser estate will be absorbed into a greater estate when they meet and coincide in the same person. To constitute a merger, the two estates must be in one and the same person, at one and the same time, and in one and the same right. The question of whether there will be a merger of a lesser and greater estate under circumstances which might permit a merger is a matter of intention and substantial justice.

(Citations omitted). *Headley v. Ackerman*, 7th Dist. Monroe No. 16 MO 0010, 2017-Ohio-8030, ¶ 32 (finding intent where a deed specified it was conveying "the same interests conveyed" and used the word "reconvey" the real estate in the same "proportion to each as was conveyed" in a prior deed).

**{¶71}** Appellees say that merger requires unity of ownership, and they suggest this would not exist where only a portion of the minerals became owned by the surface owners. The Morris heirs reply that unity of ownership does not require a surface owner to own the entire mineral interest and that a certain percentage of a mineral interest can merge with the surface. In fact, some cases cited by Appellees involve less than the entire interest. *See, e.g., Pabin v. Eberle*, 7th Dist. Monroe No. 18 MO 0008, 2019-Ohio-2728, ¶ 88-89 (where A owned the surface and then inherited 1/4 of the minerals, there was no intent to merge where the mineral owner died intestate; however, A later showed intent to merge when his will left this real estate to one person); *Gallucci v. Freshour*, 4th Dist. Hocking No. 96CA18 (Aug. 22, 1997) (co-owner mortgaged his undivided one-half interest in the property and later quit-claimed that interest to the mortgagee; when these two estates coincided in the same person, the mortgage estate was absorbed into the greater estate, the one-half of the fee estate).

**{¶72}** In any event, Appellees also use these cases to point out that merger requires intent and urge there was no intent expressed here. *See id.* Contrary to the initial suggestion of the Morris heirs, it is difficult to comprehend the argument that there exists an intent to merge by a mere undocumented inheritance of minerals under intestacy when such transfer was not memorialized in any manner. (Apt.Br. 25, stating the mineral interest they inherited "was merged with their ownership of the surface estate when Ernie Morris died" and "was merged with the surface estate prior to the execution and recordation of the 1994 Deed"). *See Pabin*, 7th Dist. No. 18 MO 0008 at ¶ 88 (where the surface owner inherited 1/4 of the minerals reservation, there was no intent to merge as the mineral owner died intestate).

**{¶73}** In their reply brief, the Morris heirs alter the argument, stating the intent to merge can be found in the 1994 deed (wherein they transferred the surface) because they recited the clause from the 1990 deed which excepted and reserved all minerals (and because they owned some of the minerals). The Morris heirs provide no support for

the contention that in a deed conveying the surface, a word-for-word repetition of a prior reservation of an entire mineral interest shows intent to merge 1/3 of the minerals (prior to that conveyance of the surface). They essentially argue that a surface owner's recitation in a surface deed of a prior mineral reservation shows the surface owner's intent to maintain any minerals they may have inherited through intestacy after that prior reservation. Appellees counter this by citing our case of *McAuley v. Brooker*, 2017-Ohio-9222, 101 N.E.3d 1118, ¶ 39 (7th Dist.) (finding the repetition of reservation language from a prior deed "shows intent for the surface and mineral estates to remain separate").

**{¶74}** Regardless, the threshold issue presented by the Morris heirs revolves around how Ernie and Louise Morris held the property. This assignment of error relies on the argument of the Morris heirs that although Ernie and Louise Morris owned the property jointly with right of survivorship, they did not retain the minerals in the same manner. They emphasize: Ernie Morris conveyed the property to himself and Louise Morris "for their joint lives, remainder to the survivor thereof" in a 1987 quit-claim deed, but the 1990 surface conveyance by Ernie and Louise Morris did not mention survivorship in the clause reserving and excepting the minerals.

**{¶75}** First, the Morris heirs cite general law stating that survivorship is not presumed and that property is held as tenants-in-common if there is no survivorship language. *See In re Estate of Shelton*, 154 Ohio App.3d 188, 2003-Ohio-4593, 796 N.E.2d 955, ¶ 9 (11th Dist.). However, "where the words of the instrument of conveyance clearly show the parties' intent to create a right of survivorship, courts will give effect to those words." *Id.* at ¶ 20 (for a deed executed prior to the enactment of a statute). The *Shelton* case addressed a deed executed prior to the enactment of statutory survivorship (addressed further infra). *See* R.C. 5302.17 (setting forth the language for a survivorship deed).

**{¶76}** The Morris heirs then note that the 1990 deed transferring the surface stated that the grantors (Ernie and Louise Morris) "except and reserve" the mineral interest. The Morris heirs argue this clause did not "except" the minerals but actually "reserved" the minerals, reasoning that a new property right was being created since the minerals had never been severed in the past. Finally, the Morris heirs reason that if the 1990 deed "reserved" the minerals and created a new property right (rather than

excepting and retaining the minerals), then words of survivorship would be required in order to hold the new right jointly with right of survivorship.

**{¶77}** The Morris heirs cite no law directly holding: while a clause "excepting" from the grant of property does not require survivorship language as to the retained property if the property was originally held in survivorship, a clause "reserving" a property right requires survivorship language regardless of how the property was originally held. We have found a Pennsylvania case stating: "the issue of survivorship turns on whether the clause involves an exception or a reservation." *See Bastian v. Sullivan*, 2015 PA Super 123, 117 A.3d 338, 346 (2015). In response to the argument that words of survivorship were needed in the mineral reservation, the court held the clause "excepting and reserving" minerals was an exception "and as such, retained the nature of the estate as it was granted," which was joint tenancy with right of survivorship. *Id.* at 346. (The court also found no intent to "sever" the joint tenancy with right of survivorship where the joint tenants listed their spouses as grantors in the sale of the surface. *Id.* at 344-345.)

**{¶78}** Before addressing the argument about whether the 1990 deed excepted or reserved the mineral, we review three statutory provisions, although the parties do not. A statute provides: "If any interest in real property is conveyed or devised to two or more persons, such persons hold title as tenants in common and the joint interest created is a tenancy in common." R.C. 5302.19. However, the mineral interest was not conveyed or devised in the 1990 surface deed.

**{¶79}** Another statute states: "A deed conveying any interest in real property to two or more persons, and in substance following the form set forth in this section * * * creates a survivorship tenancy in the grantees * * *." R.C. 5302.17. The form is then set forth as follows: "[the grantors] grant * * * to [the grantees], for their joint lives, remainder to the survivor of them * * *." *Id.* The 1987 deed from Ernie Morris to himself and Louise Morris contained this language and they owned the property for their joint lives, remainder to the survivors. Their 1990 deed conveying the surface did not convey the minerals but retained them. As the statute refers to the contents of a deed creating a survivorship tenancy "in the grantees" to whom a grantor is "conveying" a real property interest, it would not govern the grantors in the 1990 deed; the statute deals with how the property actually being conveyed would be titled among the grantees.

**{¶80}** "A conveyance from all of the survivorship tenants to any other person or from all but one of the survivorship tenants to the remaining survivorship tenant terminates the survivorship tenancy and vests title in the grantee." R.C. 5302.20. However, the minerals were not conveyed "to any other person" and it is undisputed that only the surface vested in the grantee via the 1990 deed.

**{¶81}** We turn to the arguments on whether the clause "excepting and reserving" the minerals from the surface actually excepted the minerals or reserved the minerals. Although the terms "reserve" and "except" are often now used interchangeably, the term "except" means to retain an existing right, while the term "reserve" means to create a new right. *See Talbot v. Ward*, 2017-Ohio-9213, 102 N.E.3d 544, ¶ 62 (7th Dist.). This court has explained:

> An exception exists when the grantor retains a part of the estate that can be enjoyed separate from the estate conveyed to the grantee; the grantor retains title to the excepted part of the realty. * * * A reservation is said to be the mere right or privilege, reserved by the grantor, to use the estate which is not part of the realty itself but issues out of it (such as rent or the right to timber as it is cut); the title to the whole estate passes to the grantee, but it is burdened by the right reserved.

*Rubel v. Johnson*, 2017-Ohio-9221, 101 N.E.3d 1092, ¶ 20 (7th Dist.), citing *Clark v. Guest*, 54 Ohio St. 298, 303-304, 43 N.E. 862 (1896).

**{¶82}** A main reason for distinguishing between the two concepts when confronted with an old deed was because the law previously stated that a reservation must use words of inheritance to be perpetual (otherwise it expired upon the death of the owner), while an exception did not require words of inheritance to ensure the property could be conveyed in the future. *Gill v. Fletcher*, 74 Ohio St. 295, 304, 78 N.E. 433 (1906) (but the intent rather than the label governs). In other words, if the language in the deed constituted an "exception," then words of inheritance were not necessary for the grantor to retain an interest he could convey in the future because the grantor retained a portion of his former estate; but if the language was a "reservation," then words of inheritance were necessary because the reservation created a new property interest. *See id.*

**{¶83}** We note the 1990 surface deed and mineral severance said the grantors "except and reserve for theirselves *and their heirs and assigns*" the mineral interest. Regardless, the deed was not subject to the words of inheritance test which was replaced by statute in 1925. *See* R.C. 5301.02 (words of inheritance are not necessary to create a fee simple estate). Nevertheless, we are asked to consider the law distinguishing the terms in conjunction with the argument set forth by the Morris heirs that an exception retains a property right and would thus carry forward the survivorship characteristic of the property, whereas a reservation creates a new property right and would require new survivorship language to be held jointly with right of survivorship.

**{¶84}** Concluding the minerals were "excepted" from the grant of property even though the deed said the grantor was "reserving" the minerals, the Supreme Court explained:

> It is true, the intention of the grantor was expressed by the word 'reserving,' which technically saves only a right to some use or benefit in the thing granted, instead of excluding or excepting from the operation of the deed a part of the thing embraced in the general description. But while this technical distinction between a reservation and an exception may exist, it is quite clear, from the subject-matter, that 'reserving' was here used in the sense of 'excepting.' The 'minerals underlying the soil' being a part of the land described in the deed, and not a mere future benefit or interest therein, there can be no doubt the grantor intended to retain the fee-simple title to the minerals.

*Sloan v. Lawrence Furnace Co.*, 29 Ohio St. 568, 569 (1876).

**{¶85}** In *Gill*, the grantor conveyed the property while "reserving the one-half of the plaster or the profits thereof which may hereafter be found on said land" and the deed then described the conveyance by parenthetically adding, "the half of plaster as above described only excepted." Although the deed initially said "reserving" and failed to use words of inheritance, the Court noted the deed also used the word "excepted" and found:

> it can only mean that the grantor excepted out of the estate granted and retained in himself the fee simple, which he already had, in the one-half of

the plaster. It cannot be maintained that the plaster was not in esse at the time of the conveyance. With good reason it was at that time believed to exist, although it had not been 'found'; and hence the reservation or exception. * * * The case is not at all like cases in which an estate is granted and at the same time some new right or privilege is reserved out of it to the grantor, as, for example, a right of way or other easement.

*Gill*, 74 Ohio St. at 303-304.

**{¶86}** Thus, where the deed used the term "reserving" and then the term "excepting" in a parenthetical, the Court found the mineral reservation to be an exception and a retention of a fee simple which he already owned. *Id. See also Headley*, 7th Dist. No. 16 MO 0010 at ¶ 49 (where a sheriff's deed said the grantors were "excepting and reserving" a royalty interest, this appellate court found the grantors "would not have been creating a new interest that they did not previously possess. Instead, they were retaining an existing interest that they wished to hold onto despite selling the rest of their interest in the Property" and concluded the grantors "retained an exception rather than created a reservation"); *Holdren v. Mann*, 7th Dist. Monroe No. 592 (Feb. 13, 1985) (where the deed said, "reserving all oil and gas with the right to operate therefor," this court concluded: "Very obviously, the grantor intended to keep all oil and gas, in esse; not an interest in the oil and gas, but the oil and gas as physical property. Thus, he created an exception, leaving in himself and his heirs a fee simple estate in the gas and oil. No words of inheritance were necessary.").

**{¶87}** Applying the above-reviewed law, the grant of the property by Ernie and Louise Morris to the grantees but "reserving and excepting" the minerals was clearly intended to "except" part of the land being transferred from the grant by *retaining* those minerals. The minerals already existed as corporeal parts of the property and were already owned by Ernie and Louise Morris, joint and survivor, at the time they sold the surface; it is undisputed that Ernie and Louise owned the property jointly with right of survivorship.

**{¶88}** As the argument set forth by the Morris heirs wholly depends on our finding the 1990 deed "reserved" the minerals (and created a new right) and did not "except" the minerals (by retaining them), our holding that the deed "excepted" the minerals from the

grant would mean that the remainder of their argument fails. The Morris heirs do not argue that even if the clause was an exception, the minerals cannot be held as joint tenants with right of survivorship without specific language in the exception. Rather, they seem to concede that an exception to a land conveyance in a deed is a mere retention of property which remains in the same ownership form.

{¶89} In other words: Because Ernie and Louise Morris held the property jointly with right of survivorship, their exception of their minerals from the sale of the surface in the 1990 deed resulted in them retaining their minerals in the same manner as they held the property -- jointly with right of survivorship. *Accord Bastian*, 117 A.3d at 346 (where the Pennsylvania court held the clause "excepting and reserving" minerals was an exception "and as such, retained the nature of the estate as it was granted," which was joint tenancy with right of survivorship). *See also Israel v. Jones*, 97 W.Va. 173, 124 S.E. 665, 666 (1924) (where the West Virginia Supreme Court suggested that if the grantors owned the land jointly with right of survivorship, then their mineral royalty reservation for 15 years was also owned in that manner, without even addressing whether the reservation was actually an exception).

{¶90} Following this theory, when Ernie died in 1994, Louise, as the survivor, became the sole owner of 100% of the minerals underlying the property. Therefore, when the surface owners sold the property in 1994, the word-for-word repetition of the mineral reservation in the 1990 deed was merely a recital of the prior reservation so that: the minerals were not the subject of the 1994 surface deed; the title of the minerals was not affected by the recording of that deed; and that deed did not contain a savings event under R.C. 5301.56(B)(3)(a). Accordingly, this assignment of error is overruled.

{¶91} For the foregoing reasons, the trial court's judgment is affirmed and judgment is hereby entered in favor of Appellees.


Donofrio, J., concurs.

Waite, P.J., concurs.


Case No. 20 MO 0005

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**

<u>Case No. 20 MO 0005</u>